# U.S. District Court
# Southern District of Florida (West Palm Beach)
# CRIMINAL DOCKET FOR CASE #: 9:19−mj−08526−WM All Defendants
# *Internal Use Only*

Case title: USA v. Weeks
Other court case number: 19−877 (CCC) New Jersey

Date Filed: 12/11/2019
Date Terminated: 12/20/2019

Assigned to: Magistrate Judge William Matthewman

**Defendant (1)**

**Jobadiah Sinclair Weeks**
25950−104
*English; YOB: 1981*
*TERMINATED: 12/20/2019*

represented by **Simon A. Gaugush**
Carlton Fields, P.A.
4221 W. Boy Scout Blvd.
Suite 1000
Tampa, FL 33607
813−229−4227
Fax: 813−229−4133
Email: sgaugush@carltonfields.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| Removal of Indictment to New Jersey − 18: 1349, 371 | |

**Plaintiff**

**USA** represented by **Aurora Fagan**
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
561−820−8711
Fax: 561−209−1787
Email: aurora.fagan@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/11/2019 | 1 | 6 | Magistrate Removal of Indictment from New Jersey Case number in the other District 19−877 (CCC) as to Jobadiah Sinclair Weeks (1). (kza) (Entered: 12/12/2019) |
| 12/11/2019 | 2 | 35 | PAPERLESS Minute Order for proceedings held before Magistrate Judge William Matthewman: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Jobadiah Sinclair Weeks held on 12/11/2019. The Court advised the defendant of the charges, possible maximum penalties and his rights. The Defendant informed the Court that he will hire an attorney. The Government requested pretrial detention anf three (3) days. Date of Arrest or Surrender: 12/11/2019. Total time in court: 15 minutes. Report Re: Counsel Hearing, Detention Hearing and Removal Hearing set for 12/16/2019 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. Attorney Appearance(s): AUSA Aurora Fagan. (Digital 11:32:08) Signed by Magistrate Judge William Matthewman on 12/11/2019. (kza) (Entered: 12/12/2019) |
| 12/16/2019 | 3 | 36 | NOTICE OF TEMPORARY ATTORNEY APPEARANCE: Simon A. Gaugush appearing for Jobadiah Sinclair Weeks (Gaugush, Simon) (Entered: 12/16/2019) |
| 12/16/2019 | 4 | 37 | Unopposed MOTION to Continue *Detention and Removal Hearing* re 2 Initial Appearance − Rule 5(c)(3)/Rule 40,,, by Jobadiah Sinclair Weeks. Responses due by 12/30/2019 (Attachments: # 1 Affidavit S. Gaugush Affidavit)(Gaugush, Simon) (Entered: 12/16/2019) |
| 12/16/2019 | 5 | 40 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge William Matthewman: Status Conference re: report re: counsel/detention/removal as to Jobadiah Sinclair Weeks held on 12/16/2019. (Detention Hearing reset for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate. Removal Hearing reset for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate. Report Re: Counsel Hearing set for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate.). Defendant present and sworn. Court confirmed with Defendant his desire to proceed with Mr. Gaugush as his attorney of choice; Court granted defense's request for additional time to determine permanent representation and prepare for detention and removal hearings. No opposition to continuance from government. Total time in court: 6 minutes. Attorney Appearance(s): Aurora Fagan (AUSA); Simon A. Gaugush (Temporary/Limited). (Digital 10:17:21) (spe) (Entered: 12/16/2019) |
| 12/16/2019 | 6 | 41 | |

| | | | |
|---|---|---|---|
| | | | PAPERLESS ORDER denying as moot 4 Motion to Continue as to Jobadiah Sinclair Weeks (1). Per DE 5 , the matters were reset during Duty Court. Signed by Magistrate Judge William Matthewman on 12/16/2019. (spe) (Entered: 12/16/2019) |
| 12/17/2019 | 7 | 42 | NOTICE OF ATTORNEY APPEARANCE: Simon A. Gaugush appearing for Jobadiah Sinclair Weeks (Gaugush, Simon) (Entered: 12/17/2019) |
| 12/17/2019 | 8 | 44 | WAIVER of Rule 5 & 5.1 Removal/Identity Hearings by Jobadiah Sinclair Weeks. (spe) (Entered: 12/17/2019) |
| 12/17/2019 | 9 | 45 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge William Matthewman: **Report Re Counsel** Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Identity/Removal Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Detention Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Defendant present, sworn and advised of rights. Attorney Gaugush confirmed his retention as permanent counsel for matters in this district. The defendant waived identity/removal, form executed and the Court finds the waiver knowing and voluntary. Government requested pre−trial detention. Court took judicial notice of Indictment and PTS report. Government proceeded by proffer. Government Exhibits 1−3 admitted without objection (Exhibit 3 shall be sealed). Defense proffered and argued for release on bond. Defense exhibits 1−10 admitted without objection; defense exhibits 11−13 admitted over objection. Nathaniel Sinclair Weeks sworn and provided a statement. The Court ordered defendant detained. Written order to be issued; Warrant of Removal signed. Total time in court: 2 hour(s) : 18 minutes. Attorney Appearance(s): Aurora Fagan (AUSA); Simon A. Gaugush (Retained). Also present: Andrew Hinkes (Counsel for Defendant), Nathaniel Sinclair Weeks, Stephanie Weeks. (Digital 14:19:01) (spe) (Entered: 12/17/2019) |
| 12/17/2019 | 10 | 47 | COURT EXHIBIT and WITNESS LIST re: detention hearing on 12/17/2019 regarding Jobadiah Sinclair Weeks per DE 9 . (spe) (Entered: 12/17/2019) |
| 12/20/2019 | 11 | 48 | PRETRIAL DETENTION ORDER as to Jobadiah Sinclair Weeks. Signed by Magistrate Judge William Matthewman on 12/20/2019. *See attached document for full details.* (kza) (Entered: 12/20/2019) |
| 12/20/2019 | 12 | 56 | WARRANT OF REMOVAL ISSUED to District of New Jersey as to Jobadiah Sinclair Weeks. Closing Case for Defendant. Signed by Magistrate Judge William Matthewman on 12/20/2019. *See attached document for full details.* (kza) (Entered: 12/20/2019) |
| 12/20/2019 | 13 | 57 | Notice of Criminal Transfer to New Jersey of a Rule 5 or Rule 32 Initial Appearance as to Jobadiah Sinclair Weeks. Your case number is: 19−877 (CCC). Docket sheet and documents attached. If you require certified copies of any documents, please call our Records Section at 305−523−5210. *Attention Receiving Court*: If you wish to designate a different email address for future transfers, send your request to TXND at: InterDistrictTransfer_TXND@txnd.uscourts.gov. (kza) (Entered: 12/20/2019) |
| 12/23/2019 | 14 | | TRANSCRIPT of pretrial detention hearing as to Jobadiah Sinclair Weeks held on 12−17−2019 before Magistrate Judge William Matthewman, 1−85 pages, Court Reporter: Dawn Savino, 305−523−5598 / Dawn_Savino@flsd.uscourts.gov. Transcript may be viewed at the court public |

| | | | |
|---|---|---|---|
| | | | terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/13/2020. Redacted Transcript Deadline set for 1/23/2020. Release of Transcript Restriction set for 3/23/2020. (dwh) (Entered: 12/23/2019) |
| 12/27/2019 | 15 | 111 | CLERK'S Notice of Receipt of Exhibit(s) received from CRD Re D.E. 10 Exhibit and Witness List. Exhibit Numbers: Government Exhibits: 1 −3 Defendant's Exhibits: 1 − 13 as to Jobadiah Sinclair Weeks. For retrieval information, please contact the Clerks Office − Records Section of the Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, Room 202, West Palm Beach, FL 33401, (561) 803−3400. (pcs) (Entered: 12/27/2019) |
| 01/03/2020 | 16 | | Corrected Transcript and Notice of Correction of pretrial detention hearing as to Jobadiah Sinclair Weeks held on 12−17−2019 before Magistrate Judge William Matthewman. 1−85 pages, re: 14 Transcript. CORRECTION MADE AT PAGE 14, LINE 9 AND PAGE 66 LINE 5. Court Reporter: Dawn Savino, 305−523−5598 / Dawn_Savino@flsd.uscourts.gov. (dwh) (Entered: 01/03/2020) |
| 01/07/2020 | 17 | 112 | CLERK'S Notice of Noncompliance: Failure to Electronically File Exhibit(s) received from Plaintiff/Defendant Re D.E. 10 Exhibit and Witness List. Exhibit Numbers: Government Exhibits: 1 −3 Defendant Exhibits: 1 − 13 as to Jobadiah Sinclair Weeks. Unless otherwise ordered by the Court, within ten (10) days of the conclusion of a hearing or trial, a party must file in the CM/ECF system (a) an electronic version of each documentary exhibit that the party offered or introduced into evidence and (b) a digital photograph of each non−documentary physical exhibit that the party offered or introduced into evidence. See Local Rule 5.3(b)(3) for exemptions to mandatory electronic filing. **Attorney(s)/Party(s) Plaintiff/Defendant shall file exhibits and a certificate of compliance within three days.** For retrieval information, please contact the Clerks Office − Records Section of the Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, Room 202, West Palm Beach, FL 33401, (561) 803−3400. Clerk − check for certificate of compliance on 1/13/2020. (pcs) (Entered: 01/07/2020) |
| 01/09/2020 | 18 | 113 | HEARING EXHIBITS *for December 17, 2019 Pretrial Detention Hearing* 1−13 by Jobadiah Sinclair Weeks (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13)(Gaugush, Simon) (Entered: 01/09/2020) |
| 01/09/2020 | 19 | 142 | Defendant's CERTIFICATE of Compliance Re Admitted Evidence for exhibit(s): 1−13 as to Jobadiah Sinclair Weeks by Simon A. Gaugush (Gaugush, Simon) (Entered: 01/09/2020) |
| 01/14/2020 | 20 | 143 | CLERK'S Notice Directing Counsel to Retrieve Exhibit(s) received from Defendant Re D.E. 18 Exhibits,. Exhibit Numbers: Defendant's Exhibits: 1 −13 as to Jobadiah Sinclair Weeks. **Attorney(s)/Party(s) Defendant shall retrieve original exhibits within five days.** For retrieval information, please contact the Clerks Office − Records Section of the Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, Room 202, West Palm Beach, FL 33401, (561) 803−3400. (pcs) (Entered: 01/14/2020) |

| | | | |
|---|---|---|---|
| 01/14/2020 | 21 | 144 | CLERK'S Second Notice of Noncompliance: Failure to Electronically File Exhibit(s) received from Plaintiff Re D.E. 10 Exhibit and Witness List. Exhibit Numbers: Government Exhibits: 1 − 3 as to Jobadiah Sinclair Weeks. Unless otherwise ordered by the Court, within ten (10) days of the conclusion of a hearing or trial, a party must file in the CM/ECF system (a) an electronic version of each documentary exhibit that the party offered or introduced into evidence and (b) a digital photograph of each non−documentary physical exhibit that the party offered or introduced into evidence. See Local Rule 5.3(b)(3) for exemptions to mandatory electronic filing. **Attorney(s)/Party(s) Plaintiff shall file exhibits and a certificate of compliance within three days.** For retrieval information, please contact the Clerks Office − Records Section of the Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, Room 202, West Palm Beach, FL 33401, (561) 803−3400. Clerk − check for certificate of compliance on 1/21/2020. (pcs) (Entered: 01/14/2020) |
| 01/16/2020 | 22 | 145 | EXHIBIT LIST by USA as to Jobadiah Sinclair Weeks (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Fagan, Aurora) (Entered: 01/16/2020) |
| 01/16/2020 | 23 | 150 | NOTICE of Compliance *of filing exhibits* by USA as to Jobadiah Sinclair Weeks re 22 Exhibit List filed by USA (Fagan, Aurora) (Entered: 01/16/2020) |

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 1 of 29

FILED BY ___ D.C.

DEC 11 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**UNITED STATES OF AMERICA**

**v.**

**JOBADIAH SINCLAIR WEEKS**

**Case Number: 19-** 877 (CCC)

**WARRANT FOR ARREST**

To: The United States Marshal
and any Authorized United States Officer

**YOU ARE HEREBY COMMANDED** to arrest **JOBADIAH SINCLAIR WEEKS**

and bring him forthwith to the nearest magistrate to answer a

_X_ Indictment ____ Information ____ Complaint ____ Order of Court

____ Violation Notice ____ Probation Violation Petition

charging him with:

Count One:

knowingly and intentionally conspiring and agreeing with others to devise a scheme and artifice to defraud, and to obtain money and property from victims by means of false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1349.

Count Two:

knowingly and intentionally conspiring and agreeing with others to directly and indirectly willfully offer and sell unregistered securities, contrary to Title 15, United States Code, Sections 77e and 77x, in violation of Title 18, United States Code, Section 371.

Honorable Edward S. Kiel
**Name of Issuing Officer**

[signature]
**Signature of Issuing Officer**

United States Magistrate Judge
**Title of Issuing Officer**

December 5, 2019 at Newark, NJ
**Date and Location**

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 2 of 29

19-8526-WM

RECEIVED

DEC 06 2019

AT 8:30 M
WILLIAM T. WALSH, CLERK

2017R01336/DVF/JLH

FILED

DEC 05 2019

AT 8:30 4:00 P M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| v. | : | |
| MATTHEW BRENT GOETTSCHE, [redacted] JOBADIAH SINCLAIR WEEKS, JOSEPH FRANK ABEL, and SILVIU CATALIN BALACI | : | Criminal Number: 19-877 (CCC) |
| | : | 18 U.S.C. § 371 18 U.S.C. § 1349 |

FILED BY [initials] D.C.

DEC 11 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**INDICTMENT**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

**COUNT ONE**
(Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349)

1. At times relevant to this Indictment:

**Individuals and Entities**

a. BitClub Network ("BCN") was a worldwide fraudulent scheme that solicited money from investors in exchange for shares of pooled investments in cryptocurrency mining and that rewarded existing investors for recruiting new investors.

b. Defendant MATTHEW BRENT GOETTSCHE created and operated BCN.

c. Defendant [redacted] created, operated, and promoted BCN.

    Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 3 of 29

d. Defendant JOBADIAH SINCLAIR WEEKS promoted BCN.

e. Defendant SILVIU CATALIN BALACI created and operated BCN. BALACI also served as programmer for BCN.

**Relevant Terminology**

f. "Cryptocurrency" was a digital representation of value that could be traded and functioned as a medium of exchange; a unit of account; and a store of value. Its value was decided by consensus within the community of users of the cryptocurrency.

g. "Bitcoin" was a type of cryptocurrency. Bitcoin were generated and controlled through computer software operating via a decentralized, peer-to-peer network. Bitcoin could be used for purchases or exchanged for other currency on currency exchanges.

h. "Mining" was the way new bitcoin were produced and the way bitcoin transactions were verified. Individuals or entities ran special computer software to solve complex algorithms that validated groups of transactions in a particular cryptocurrency. Under the bitcoin protocol, which fostered a competition to verify transactions for inclusion on the public bitcoin ledger, known as the "blockchain," the first miner to solve the algorithm was rewarded with a preset amount of newly-issued bitcoin.

i. "Hash rate" was the measure of the speed at which a mining machine operated by way of computer processing power that was applied by

miners to solve the algorithms and harvest new currency. Hash rate was expressed generally as the number of calculations mining computers could perform per second. In general, the greater the hash rate, the greater the miner's chance to solve the algorithm and be rewarded the newly-issued bitcoin.

j. "Mining pools" were combinations of cryptocurrency miners who consolidated their computing power to achieve greater hash rate.

k. A "virtual private network" ("VPN") allowed an internet user to secure his or her internet connection and anonymize internet use by obscuring and concealing the user's true personal identity and location information.

**The Conspiracy**

2. From at least in or around April 2014 through in or about December 2019, in Passaic County, in the District of New Jersey, and elsewhere, defendants

**MATTHEW BRENT GOETTSCHE,**
[redacted]
**JOBADIAH SINCLAIR WEEKS, and**
**SILVIU CATALIN BALACI,**

knowingly and intentionally conspired and agreed with each other and others to devise a scheme and artifice to defraud, and to obtain money and property from victims by means of false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 3 of 29

defraud, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

**The Goal of the Conspiracy**

3. It was the goal of the conspiracy for the GOETTSCHE, [redacted] WEEKS, BALACI, and others (the "Fraud Co-Conspirators") to enrich themselves by soliciting and causing others to solicit investments in BCN through materially false and fraudulent pretenses, representations, promises, and omissions.

**Manner and Means of the Conspiracy**

4. It was part of the conspiracy that:

a. GOETTSCHE, [redacted] WEEKS, and others promoted and caused to be promoted investments in BCN shares as a pooled investment of bitcoin mining proceeds.

b. GOETTSCHE, BALACI, and others discussed and understood that BCN's purported cryptocurrency mining would not be profitable, but would serve to induce investors to purchase BCN memberships and shares in BCN's purported mining pools.

c. The Fraud Co-Conspirators made and caused others to make materially false and fraudulent pretenses, representations, and promises to,

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 6 of 29

and to conceal material facts from, investors regarding aspects of BCN's investment products, including the information that was displayed to BCN's investors as proof of "bitcoin mining earnings" that purportedly were generated through BCN's bitcoin mining pool.

d. GOETTSCHE, BALACI, and [redacted] manipulated the numbers that were displayed to BCN investors as "mining earnings" to promote the sale of bitcoin mining shares in BCN and to convince BCN members to invest additional funds in other BCN cryptocurrency-related products.

e. Based on the materially false and fraudulent pretenses, representations, promises, and omissions that the Fraud Co-Conspirators made and caused to be made to investors, the Fraud Co-Conspirators, both individually and through BCN, received funds from investors, including through cash, check, wire transmissions, and cryptocurrency transfers.

f. The Fraud Co-Conspirators, through BCN, obtained at least $722 million from investors.

g. The Fraud Co-Conspirators and others discussed the fraudulent scheme over email and Internet chat, posted videos encouraging investment in BCN, and used the BCN website to promote the fraudulent scheme, including, for example, the following:

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 7 of 29

i. In or around June 2014, GOETTSCHE and BALACI exchanged emails to discuss the formation of BCN. During this exchange, BALACI emailed GOETTSCHE: "The margins from the MLM [multi-level marketing] will also be insane cause I have seen your skill at constructing attractive matrixes that have almost 0 chance of paying more than 50% of max for 99% of the people :D."

ii. In or around July 2014, as part of an online chat exchange, BALACI told GOETTSCHE that BCN's target audience would be "the typical dumb MLM investor."

iii. In or around October 2014, via Internet chat, GOETTSCHE and BALACI discussed posting fake mining statistics at the inception of BCN to promote the sale of shares in BCN:

| | |
|---|---|
| GOETTSCHE | but we may need to fake it for the first 30 days while we get going |
| BALACI | sure |
| BALACI | we can do that |
| GOETTSCHE | it needs to look real though 😛 |
| GOETTSCHE | so need a bit of your magic touch on it |
| BALACI | look real how? We fake real revenue numbers and show them in account daily |
| GOETTSCHE | and we dont want to fake it too good so that when we need to back it down it drops off |
| GOETTSCHE | terminolgy |
| GOETTSCHE | explanation of what is happening |
| GOETTSCHE | inconsistent numbers daily so its not perfect |
| GOETTSCHE | all kinds of stuff |
| BALACI | inconsistent numbers IS real |
| GOETTSCHE | people think we are not legit or are weary so we need to be careful rolling this out |

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 8 of 29

| | |
|---|---|
| BALACI | if we pay consistent numbers it will be fake |
| GOETTSCHE | i know... thats what I am saying, make the numbers inconsistent |
| BALACI | yeah |
| BALACI | will make it real |

iv. In or around October 2014, GOETTSCHE and BALACI discussed how to calculate fake mining earnings for investors. BALACI stated, "I guess most people do not know only 40% is used for mining and the rest for commissions," to which GOETTSCHE replied, "the leaders know . . . its the sheep that dont."

v. In or around January 2015, GOETTSCHE and BALACI discussed the need to show investors proof of mining power to promote investment in BCN. GOETTSCHE offered BALACI $50,000 to devise a way for BCN to show purported "proof" of a BCN pool without BCN actually having mining power:

| | |
|---|---|
| GOETTSCHE | got a challenge for you |
| GOETTSCHE | $50k bonus |
| GOETTSCHE | to get us "proof" of our own pool |
| GOETTSCHE | by end of month |

. . . .

| | |
|---|---|
| BALACI | "proof" ? as in without you having mining power? |
| BALACI | and with you riding me hard avbout everything else ☺ |
| GOETTSCHE | having our own node |
| GOETTSCHE | yep |
| GOETTSCHE | its a big one |
| GOETTSCHE | Ill put together full details |
| GOETTSCHE | to make it achievable |
| BALACI | ok |
| GOETTSCHE | but that will instantly net us 10x that |

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 9 of 29

| | |
|---|---|
| BALACI | so you want our own pool |
| GOETTSCHE | yes |
| GOETTSCHE | dude |
| BALACI | and then we get miners to mine there? |
| GOETTSCHE | most of these idiots |
| BALACI | ok |
| GOETTSCHE | have no idea |
| BALACI | by the end of the month... |
| GOETTSCHE | they just want to make sure we can verify SOMETHING |
| BALACI | 50k bonus |
| BALACI | deal |
| GOETTSCHE | that is the #1 question |
| GOETTSCHE | are you really mining? |
| BALACI | well, having a pool is 1 thing.... showing mining power is a totally different animal |
| BALACI | I can get you the pool! |
| BALACI | we can then offer 5% mining bonus to miners |
| BALACI | that will get us power |
| GOETTSCHE | with a pool, we can get miners to join |
| BALACI | then we can divert some of that |

vi. In or around January 2015, GOETTSCHE told BALACI, "we are building this whole model on the backs of idiots" and to "prove the mining . . . just means convincing the morons ☺."

vii. In or around January 2015, GOETTSCHE and BALACI discussed developing fake "proof" and "statistics" to display to potential BCN investors to promote investment in BCN:

| | |
|---|---|
| GOETTSCHE | how can we get some shiny shit for members? |
| GOETTSCHE | oh also |
| GOETTSCHE | need to bump up the payout |
| GOETTSCHE | its really low |
| BALACI | what shiny shit you want exactly? |
| BALACI | ok |

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 10 of 29

| | |
|---|---|
| GOETTSCHE | the stats you just showed me |

. . . .

| | |
|---|---|
| BALACI | ?? fake a pool |
| BALACI | or? |
| GOETTSCHE | yea |
| GOETTSCHE | real stats on fake numbers |
| GOETTSCHE | we will slowly introduce real numbers |
| BALACI | uhmmm ok, but to make it believable will not be easy |
| BALACI | cause we need to code variance in |
| BALACI | will try to get something up |
| GOETTSCHE | Im telling you man |
| GOETTSCHE | some stats like this |
| GOETTSCHE | a picture with our banners |
| GOETTSCHE | and some proof in the blockchain |
| GOETTSCHE | and look the fuck out!! |
| GOETTSCHE | its over |

viii. In or around February 2015, GOETTSCHE directed BALACI to manipulate and falsely increase the "mining earnings" figures displayed to investors on their BCN online accounts:

| | |
|---|---|
| GOETTSCHE | bump up the daily mining earnings starting today by 60% |

. . . .

| | |
|---|---|
| BALACI | 60%? |
| BALACI | wow |
| BALACI | that is not sustainable, that is ponzi teritori and fast cash-out ponzi |
| BALACI | but sure |
| GOETTSCHE | yea they have not been bumped in a long time |
| BALACI | ok |
| GOETTSCHE | we can push them back down, but we need a boost |
| BALACI | you do realize you need to pay for like 1000 days technically? |
| BALACI | kk |
| GOETTSCHE | we will dilute over time |
| GOETTSCHE | members will think its due to strong growth |

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 11 of 29

| | |
|---|---|
| GOETTSCHE | but right now the payout does not even break people even after 1,000 days |
| GOETTSCHE | we need to look like we will break them even in 9-12 months |
| GOETTSCHE | and then start to curtail it from there |
| GOETTSCHE | just bump it by 60%, im putting together an update about newly installed equip and that we will be showing mining proof in the next week |

ix. In or around August 2015, BALACI told GOETTSCHE, "I noticed you drastically decreased mining payments and people started complaining[.]" GOETTSCHE agreed, "yea."

x. From at least as early as in or around August 2015 through in or around November 2019, BCN falsely claimed on its website that "Our pool was established in October 2014 as a solo mining pool that was exclusive to BitClub Network members," when, in fact, BCN lacked a mining pool exclusive to its members in October 2014.

xi. In or around December 2015, WEEKS messaged [REDACTED] and another individual about BCN and stated:

> We really should have sep stats and oct stats and nov stats. The sophisticated investors with a lot of cash are hesitant with putting in big cash because they want to see the mining contract, the receipt or title to the mining equipments, proof that they own something in return, how much the mine made and what the mine paid out to each share holder so they can calculate what a share is worth etc. Bitclub pool doesn't tell us how many share holders we have etc. Its not transparent enough for the big big money guys.

xii. In or around June 2017, WEEKS emailed GOETTSCHE and [REDACTED] a business opportunity involving BCN, and observed: "We (Bitclub)

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 12 of 29

can't just 'sell' people mining hardware (shares) in Bitclub and then not use the money to buy equipment. Its not right. Bitclub makes 20% regardless of the price."

xiii. In or around September 2017, GOETTSCHE and [redacted] exchanged emails regarding a new scheme to encourage current BCN investors to reinvest their shares into another BCN investment product. GOETTSCHE suggested that BCN manipulate mining earnings:

> We close the current pool to new shares, we call it the Early Adopters Pool or Legacy Pool or some shit like this. We continue to pay out for the total of the life of the pool but no more partial shares or new shares allowed in. This means the day we close it we have 1,000 days that we calculate out and put on autopilot.
>
> . . . .
>
> Here is my current plan... (in my head)
>
> 1. Limit sales by the hour to do $50 mil per month
>
> 2. Drop mining earnings significantly starting now
>
> . . . .
>
> 8. We retire RAF!!! (rich as fuck)

[redacted] responded to this plan: "I like it. Call me when you can."

All in violation of Title 18, United States Code, Section 1349.

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 13 of 29

**COUNT TWO**

(Conspiracy to Offer and Sell Unregistered Securities – 18 U.S.C. § 371)

1. Paragraphs 1 and 4 of Count One of this Indictment are re-alleged and incorporated herein.

2. At times relevant to Count Two of this Indictment:

a. Defendant JOSEPH FRANK ABEL promoted BCN.

**BCN**

b. BCN held itself out as a profit-seeking business venture. Investors paid a $99 membership fee to be a part of BCN and then were provided the option to pay additional money for shares in what BCN purported were three mining pools. According to BCN's website, investors could "earn passive income" through investment in the pools. Specifically, BCN represented:

> You can purchase a share in 3 different mining pools and all Bitcoin mined from each pool will be paid and shared with all members eligible for the pool. You pay either $500, $1,000, or $2,000 worth of Bitcoin for a share of the mining pool.
>
> With your purchase you will receive Bitcoin for 600 days! A percentage of all Bitcoin mined and paid to you will be used to pay for mining costs and to purchase new mining equipment.
>
> *No Sponsoring Required to Earn Mining Pool Payouts

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 14 of 29

c. BCN further described the different investment options:

> Mining Pool #1 -- -- Each share cost $500 USD that will be used to purchase new Bitcoin mining servers. All Bitcoin earned will be split among all members of this pool and paid out daily. Each share earns 50% profit with the other 50% being used to fund the mining operation and to purchase additional mining shares.
>
> Mining Pool #2 -- Each share cost $1,000 USD and just like Pool #1 the total Bitcoin earned will be split among all members in the pool and paid out. Each share earns 60% profit with the other 40% being used to fund the mining operation and to purchase additional mining shares.
>
> Mining Pool #3 -- Each share cost $2,000 USD and the total Bitcoin earned will be split among all members in the pool and paid out. Each share earns 70% profit with the other 30% being used to fund the mining operation and to purchase additional mining shares.

d. BCN represented to investors that BCN would pool investor money together to sustain, among other things, bitcoin mining pools, including by purchasing mining equipment and computer power and by engaging in cryptocurrency mining. On its website, BCN further stated that BCN "use[s] our leverage and massive purchasing power to strategically buy mining hardware at the lowest prices and share in all the profits produced."

e. BCN represented to investors that investors' mining returns would be calculated based on the mining success of the collective operations for each of the pools. BCN represented that purchases of shares in the mining

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 15 of 29

pools would determine a BCN member's allocation of mining pool profits, with more shares leading to a greater allocation of the mining pool profits. BCN's website displayed the following illustration of how BCN investors would earn profit from their investments in shares of the purported bitcoin mining pools:

> Example: Using Mine #1, if the total Bitcoin mined for the day = 1 BTC and there are 100 shares outstanding then each share would earn .01 BTC. From this total 50% of it would be paid directly to member as profit (.005 BTC) and the other 50% (.005 BTC) would be used to fund the mining operation costs and to purchase additional shares.
>
> So if the value of 1 Bitcoin = $500 USD and you have 1 share then you would earn $5 USD (.01 BTC) of which $2.50 is paid to you and $2.50 is used to purchase an additional share on your behalf. In this case you would purchase an additional .005 shares with your $2.50 and you would have a total of 1.005 shares going into the next day that you are now earning on.

f. BCN represented that its "team" would control, manage, and operate the bitcoin mining, while investors would share in the pro-rata distribution of profits derived from the bitcoin mining pools. On its website, BCN claimed that it was not owned by any one person, but instead was

> a team of experts, entrepreneurs, professionals, network markers, and programming geeks who have all come together to launch a very simple business around a very complex industry. Anyone can join BitClub and begin earning a passive income by taking advantage of our expertise in Bitcoin mining and other Bitcoin related services.

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 16 of 29

g. Shares in BCN were "securities" as that term is defined by Title 15, United States Code, Section 77b(a)(1).

h. BCN did not file a registration statement to register shares of BCN with the U.S. Securities and Exchange Commission (the "SEC").

i. BCN promoted and sold shares of its mining pools both in the United States, including in New Jersey, and abroad.

j. In or around August 2017, BCN admitted in an investor update that "Bitcoin might be a security regulated by the SEC, [and] Bitcoin mining could potentially be a security[,]" yet did not register with the SEC.

**The Conspiracy**

3. From in or about 2014 through in or about December 2019, in Passaic County, in the District of New Jersey, and elsewhere, defendants

**MATTHEW BRENT GOETTSCHE,**
[redacted]
**JOSEPH FRANK ABEL,**
**JOBADIAH SINCLAIR WEEKS, and**
**SILVIU CATALIN BALACI,**

knowingly and intentionally conspired and agreed with each other and others to directly and indirectly willfully offer and sell unregistered securities, contrary to Title 15, United States Code, Sections 77e and 77x.

**Goal of the Conspiracy**

4. The goal of the conspiracy was for GOETTSCHE, [redacted] ABEL, WEEKS, BALACI, and others (the "Promotion Co-Conspirators") to, directly and

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 17 of 29

indirectly, willfully offer and sell securities in BCN without filing a registration statement with the U.S. Securities and Exchange Commission, and use the means and instruments of transportation and communication in interstate commerce and the mails in connection with the offer and sale, for the purpose of enriching themselves and others.

**Manner and Means of the Conspiracy**

5. It was part of the conspiracy that:

a. GOETTSCHE, [redacted] WEEKS, ABEL, and others directly and indirectly took money from investors in exchange for membership in BCN and as investment for shares of mining pools that BCN purported to own and operate.

b. GOETTSCHE, [redacted] BALACI, and others created and displayed, and caused to be created and displayed, content on BCN's websites to promote the sale of shares in BCN's purported mining pools.

c. [redacted] ABEL, WEEKS, and others promoted the sale of shares in BCN through discussions with potential investors via the Internet and by creating and posting videos on the Internet.

d. [redacted] ABEL, WEEKS, and others promoted the sale of BCN shares by giving speeches and making presentations in the United States, including in New Jersey, and around the world.

e. GOETTSCHE, [redacted] WEEKS, ABEL, and others induced

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 18 of 29

investors to pay for membership in BCN and to pay for shares in the purported profits of cryptocurrency mined from pools which BCN purported to manage on behalf of its members.

f. GOETTSCHE, [redacted] WEEKS, ABEL, and others represented to investors that buying shares of BCN's mining pools would allow investors to profit from mining cryptocurrency without the expense and expertise that would be required to purchase and maintain their own cryptocurrency mining equipment.

g. ABEL, WEEKS, and others encouraged U.S. investors to utilize a VPN to obscure their true, U.S.-based IP addresses so that BCN and the Defendants could avoid detection and regulation by U.S. law enforcement.

**Overt Acts**

6. In furtherance of the conspiracy and to effect the object of the conspiracy, the Promotion Co-Conspirators committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere.

a. In or around September 2014, [redacted] exchanged emails with an individual about BCN, including whether BCN was required to register its shares with the SEC.

b. In or around January 2015, BALACI informed GOETTSCHE that the artificially high mining payouts that BCN was purportedly making to

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 19 of 29

its early investors, which was done to promote further investment in BCN, were not sustainable:

> [W]e started paying a shitload of money, totally unsustainable amount! That was because you wanted to attract people initially. We are still paying unsustainable amounts each single day, they are still high! Amounts have constantly dropped every day with minor jumps up. But as it stands now, we still pay a lot more than what should be paid if we were to do it in a sustainable manner. Keep in mind that only 40% is generating mining commissions (well, 40% is allocated to mining the rest being commissions for binary and levelup).
>
> So, as a conclusion, based on the mining allocation % and time frame of the share validity I think the payments are still unsustainable and too high.

In response, GOETTSCHE instructed:

> [O]k well, lets just continue to back it down gradually... We need a big catalyst because we want people to be buying right now in droves while the price is low so once this email thing is ready we will come up with a good campaign. The key is to grow very fast over the next 90 days and then hope the price shoots up while keeping the mining relatively the same.

c. In or around February 2015, BALACI and GOETTSCHE discussed the need to provide its investors and potential investors purported "proof" that BCN was mining bitcoin to promote further investment in BCN:

| | |
|---|---|
| GOETTSCHE | all we need is proof man |
| GOETTSCHE | dont need a rock solid plan |
| GOETTSCHE | just proof! |
| BALACI | ok |
| BALACI | will write a doooc today |

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 20 of 29

| | |
|---|---|
| BALACI | on how members can check proof RIGHT now! |
| BALACI | based on the address you sent me |
| BALACI | will write a step-by-step |
| BALACI | with screenshots |
| GOETTSCHE | think of it like this.... for every 10k we spend in proving our mining we make 20k back |
| GOETTSCHE | cool |
| BALACI | 😄 |
| BALACI | I do have one request also |
| BALACI | past middle of Feb and nothing was paid from that 50k bonus.... I promised some of it downline also to motivate people to meet the deadline! Please send like 28.5k (half of the nbonus + 3.5k from the last payment). |
| GOETTSCHE | wasnt that bonus for a working pool? |
| BALACI | you are shitting me, right? |
| BALACI | the pool was done like on 20th Jan |
| BALACI | you inspected it also, it was live |
| BALACI | working |
| BALACI | mining power was missing which still is |
| GOETTSCHE | I guess our definition of "working" differs |
| BALACI | not my fault for that |
| BALACI | what? |
| GOETTSCHE | can I get someone to use it? |
| BALACI | dude, I do software I do not make mining power appear out of thin air |

d. In or around October 2015, ABEL sent [redacted] an article titled "Onecoin Abandons US Operations," which stated, among other things:

> So what's the real reason OneCoin are abandoning the US?
>
> Well, the mention of the SEC is a pretty solid giveaway.
>
> OneCoin offer unregistered securities globally, with newly invested funds used to pay off existing investors.

e. In or around November 2015, WEEKS prepared a video that was uploaded to the Internet, in which WEEKS promoted the sale of shares in

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 21 of 29

BCN, explaining that "right now we're finding about ten thousand dollars a day in bitcoin," and that "whatever the mine finds each day is evenly disbursed in a daily dividend to our shareholders."

f. In or around March 2016, ABEL prepared a webinar video about BCN, which was posted onto the Internet. This webinar promoted investment in BCN and represented, among other things:

> [W]e've looked at all the people who joined about five hundred days ago and most of us are making almost two and a half times more than we did when [we] started. . . . When we mine, you get paid. All the time we make money, you get paid and all of our system is third party validated. It is, literally, like being in the public market.

g. In or around April 2016, GOETTSCHE and [redacted] discussed the fact that U.S.-based individuals had invested in BCN.

h. In or around May 2016, ABEL told WEEKS that ABEL was traveling to California to promote investment in BCN.

i. In or around November 2016, [redacted] posted a video promoting investment in BCN. [redacted] represented, among other things:

> [A]nd, the beautiful thing about this is that, if no more new people join BitClub Network, it's okay because we've already bought the equipment, we're already mining bitcoin. If we don't get any more that join, we're still gonna be mining bitcoin, everybody is gonna keep getting paid over, and over, and over, and over, and over again. It is not going to stop.
>
> . . . . [E]verything is bitcoin that we're doing here, it's transparent. We can't hide this. You guys have access

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 22 of 29

to this. You can see that what we're saying is true, we can't fake this. So, I hope that makes sense to everybody. That we have the most transparent company in the history of the world that I've ever seen. Maybe something will be more transparent but this is pretty close to the top of transparent. . . .

. . . .

So if you invest in a gold mining operation, you're not gonna go start digging holes, the gold miners dig up the gold, they just give you your gold every single day. This is the same kind of thing. So, if you put that same 3,599 in to mining with us, I think three years from now, you could end up with between anywhere from 15, and I'm gonna be very conservative here, 15 to 25 bitcoin. I think it could be a lot higher than this but I'm just gonna call it 15 to 25 bitcoin. If we're right and you end up getting between 15 to 25 bitcoin over the next three years. You're talking about if the price is at 10,000, that's between 150 and 250,000 dollars for a 3,599 dollar investment.

. . . .

So a portion of everybody's bitcoin that you're mining, has to go back in to help buying new equipment so uh pool one 50 percent minimum has to go back in, pool two, 40 percent, pool three, 30 percent. What does that mean? That means that you're gonna end up having more and more and more shares in all of the pools. So, even though you get started and you end up using your days, it doesn't matter 'cuz you're gonna end up having shares that still have a thousand days attached to them. So, this is pay one time, but get paid forever, and ever, and ever, and ever. You're never going to run out of shares. And, if you do refer other people every time that they make a repurchase, you're getting paid again, and again, and again, and again on all of those people. That's what's just beautiful about all of this.

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 23 of 29

j. In or around March 2017, ABEL traveled to New Jersey to promote the sale of shares in BCN.

k. In or around August 2017, ABEL prepared a video that was posted on the Internet in which ABEL promoted the sale of shares in BCN and represented, among other things:

> [W]hat we have done is create a very unique window of opportunity for our members um here in America and around the world um, we no longer service the United States, as she told you that, and she'll explain to you guys how to get around that whole process to keep yourself uh 100% legit.

l. In or around October 2017, WEEKS traveled to Florida to promote the sale of shares in BCN.

m. In or around January 2018, ABEL participated in a recorded Internet video session, in which ABEL instructed U.S.-based investors how to use a VPN to access BCN's websites.

n. In or around March 2018, ABEL prepared a video and caused it to be posted on the Internet, promoting BCN, in which ABEL stated, "we are, what they call in the bitcoin network, too big to fail. . . . It's important that you understand that. We're too big to fail."

o. In or around March 2018, [redacted] emailed ABEL an article addressing U.S. securities regulation. The article stated, among other things:

> In my almost ten years of covering the industry, I've come to realize that if an MLM company tries to convince you they're not selling securities – then they

> probably are.
>
> That's because the securities law with respect to MLM investment opportunities is pretty clear-cut: MLM + passive ROI = security.

All in violation of Title 18, United States Code, Section 371.

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 25 of 29

**FORFEITURE ALLEGATION AS TO COUNT ONE**

1. As the result of committing the offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), as alleged in Count One of this Indictment, defendants

**MATTHEW BRENT GOETTSCHE,**
[redacted]
**JOBADIAH SINCLAIR WEEKS, and**
**SILVIU CATALIN BALACI,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the wire fraud conspiracy offense, and all property traceable thereto, including, but not limited to the Specific Property listed in Attachment A to this Indictment.

**Substitute Assets Provision**

2. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 26 of 29

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

A True Bill.

CRAIG CARPENITO
United States Attorney

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 27 of 29

## ATTACHMENT A

a. RBC Wealth Management account number [redacted]2600 in the name of Getch Holdings LLC;

b. RBC Wealth Management account number [redacted]4535 in the name of Getch Foundation;

c. RBC Wealth Management account number [redacted]0125 in the name of Getch Holdings LLC Construction Fund; and

d. Any and all ownership interest held in the name, on behalf or for the benefit of Matthew Goettsche, Gobit LLC and/or Getch 2021 LLC in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates and joint ventures, including but not limited to:

   i. Orbesehc Industrial LLC

   ii. HIIT Health LLC

(collectively, the "Specific Property").

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 28 of 29

CASE NUMBER: 19-cr-877-CCC

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

MATTHEW BRENT GOETTSCHE,
[redacted]
JOBADIAH SINCLAIR WEEKS,
JOSEPH FRANK ABEL, and
SILVIU CATALIN BALACI

INDICTMENT FOR
18 U.S.C. § 371
18 U.S.C. § 1349

A True Bill

CRAIG CARPENITO
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

DAVID W. FEDER
ANTHONY P. TORNTORE
JAMIE L. HOXIE
*ASSISTANT U.S. ATTORNEY*
*NEWARK, NEW JERSEY*
*(973) 645-2700*

USA-48AD 8
(Ed. 1/97)

Case 9:19-mj-08526-WM Document 1 Filed 12/11/19 Page 29 of 29

**THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY**

DEFENDANT'S NAME: Jobadiah Sinclair Weeks

ALIAS: Joby

LAST KNOWN RESIDENCE: 11627 W. 74th Way, Arvada, Colorado, 80005

LAST KNOWN EMPLOYMENT: ____________

PLACE OF BIRTH: Colorado, United States

DATE OF BIRTH: 8/25/1981

SOCIAL SECURITY NUMBER: 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

HEIGHT: 6'2" WEIGHT: 165

SEX: M RACE: White

HAIR: Brown EYES: Green

SCARS, TATTOOS, OTHER DISTINGUISHING MARKS: ____________

FBI NUMBER: 339747LB6

STATE NUMBER: ____________

COMPLETE DESCRIPTION OF AUTO: ____________

INVESTIGATIVE AGENCY AND ADDRESS: FBI, West Covina Resident Agency, 1050 Lakes Drive, Suite 350, West Covina, California 91790

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov,
sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls-brdkt@usdoj.gov, usafls-hqdkt@usdoj.gov),
Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
--Non Case Participants: Federal Public Defender (fls_ecf@fd.org)
--No Notice Sent:

Message-Id:19522486@flsd.uscourts.gov
Subject:Activity in Case 9:19-mj-08526-WM USA v. Weeks Initial Appearance - Rule
5(c)(3)/Rule 40
Content-Type: text/html
```

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 12/12/2019 at 2:37 PM EST and filed on 12/11/2019

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19-mj-08526-WM |
| **Filer:** | |
| **Document Number:** | 2(No document attached) |

**Docket Text:**
**PAPERLESS Minute Order for proceedings held before Magistrate Judge William Matthewman: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Jobadiah Sinclair Weeks held on 12/11/2019. The Court advised the defendant of the charges, possible maximum penalties and his rights. The Defendant informed the Court that he will hire an attorney. The Government requested pretrial detention anf three (3) days. Date of Arrest or Surrender: 12/11/2019. Total time in court: 15 minutes. Report Re: Counsel Hearing, Detention Hearing and Removal Hearing set for 12/16/2019 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. Attorney Appearance(s): AUSA Aurora Fagan. (Digital 11:32:08) Signed by Magistrate Judge William Matthewman on 12/11/2019. (kza)**

**9:19-mj-08526-WM-1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS-BRDKT@usdoj.gov, usafls-hqdkt@usdoj.gov

**9:19-mj-08526-WM-1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:**

Case 9:19-mj-08526-WM Document 3 Filed 12/16/19 Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
_______________________________________/

**NOTICE OF LIMITED APPEARANCE**

Simon A. Gaugush of Carlton Fields, P.A. notices his appearance as counsel for Defendant Jobadiah Sinclair Weeks for the limited purpose of representing the Defendant at the Detention and Removal Hearing currently scheduled for December 16, 2019. The undersigned requests that all correspondence and pleadings be directed to him.

Dated: December 16, 2019

*/s/ Simon A. Gaugush*

Simon A. Gaugush
Florida Bar Number 440050
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor
Tampa, Florida 33601
Telephone: (813) 223-7000
Email: sgaugush@carltonfields.com

*Counsel for Defendant Jobadiah Sinclair Weeks*

Case 9:19-mj-08526-WM Document 4 Filed 12/16/19 Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
_______________________________________/

**DEFENDANT'S UNOPPOSED MOTION TO CONTINUE DETENTION AND REMOVAL HEARING**

Pursuant to 18 U.S.C. § 3142(f), Defendant Jobadiah Sinclair Weeks, by and through the undersigned counsel, hereby moves for a brief continuance of the Detention and Removal Hearing currently scheduled for December 16, 2019 at 10:00 a.m. In support of this motion, Defendant states that he has recently retained the undersigned counsel in this matter, and counsel requires a brief continuance in order to adequately prepare for the hearing. Pursuant to Local Rule 7.6, an affidavit setting forth a showing of good cause is attached as Exhibit 1. Counsel for the United States consents to a brief extension, until the afternoon of December 17, 2019, to conduct the hearing.

**CERTIFICATE OF CONFERRAL**

In accordance with Local Rule 88.9, counsel for the respective parties have conferred, and counsel for the United States does not oppose this motion.

Case 9:19-mj-08526-WM Document 4 Filed 12/16/19 Page 2 of 2

WHEREFORE, Defendant requests a brief continuance, until the afternoon of December 17, 2019, to conduct the Detention and Removal Hearing.

Dated: December 16, 2019

*/s/ Simon A. Gaugush*

Simon A. Gaugush
Florida Bar Number 440050
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor
Tampa, Florida 33601
Telephone: (813) 223-7000
Email: sgaugush@carltonfields.com

*Counsel for Defendant Jobadiah Sinclair Weeks*

Case 9:19-mj-08526-WM Document 4-1 Filed 12/16/19 Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
_____________________________________/

**AFFIDAVIT IN SUPPORT OF DEFENDANT'S UNOPPOSED MOTION TO CONTINUE DETENTION AND REMOVAL HEARING**

On Friday, December 13, 2019, undersigned counsel met with Defendant Jobadiah Sinclair Weeks about the above-referenced matter. On Sunday, December 15, 2019, the defendant executed an engagement letter to retain the undersigned counsel in this case. Undersigned counsel requires additional time to fully prepare for the detention and removal hearing scheduled in this case.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Simon A. Gaugush*
Simon A. Gaugush
Florida Bar Number 440050
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor
Tampa, Florida 33601
Telephone: (813) 223-7000
Email: sgaugush@carltonfields.com

*Counsel for Defendant Jobadiah Sinclair Weeks*

Case 9:19-mj-8526 NEF for Docket Entry 5 Filed 12/16/2019 Page 1 of 1

MIME−Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
−−Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls−brdkt@usdoj.gov, usafls−hqdkt@usdoj.gov), Simon A. Gaugush (amaranto@carltonfields.com, sgaugush@carltonfields.com), Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
−−Non Case Participants:
−−No Notice Sent:

Message−Id:19530461@flsd.uscourts.gov
Subject:Activity in Case 9:19−mj−08526−WM USA v. Weeks Status Conference
Content−Type: text/html

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 12/16/2019 at 11:51 AM EST and filed on 12/16/2019

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19−mj−08526−WM |
| **Filer:** | |
| **Document Number:** | 5(No document attached) |

**Docket Text:**
**PAPERLESS Minute Entry for proceedings held before Magistrate Judge William Matthewman: Status Conference re: report re: counsel/detention/removal as to Jobadiah Sinclair Weeks held on 12/16/2019. (Detention Hearing reset for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate. Removal Hearing reset for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate. Report Re: Counsel Hearing set for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate.). Defendant present and sworn. Court confirmed with Defendant his desire to proceed with Mr. Gaugush as his attorney of choice; Court granted defense's request for additional time to determine permanent representation and prepare for detention and removal hearings. No opposition to continuance from government. Total time in court: 6 minutes. Attorney Appearance(s): Aurora Fagan (AUSA); Simon A. Gaugush (Temporary/Limited). (Digital 10:17:21) (spe)**

**9:19−mj−08526−WM−1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov

Simon A. Gaugush     sgaugush@carltonfields.com, amaranto@carltonfields.com

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

Case 9:19-mj-8526 NEF for Docket Entry 6 Filed 12/16/2019 Page 1 of 1

MIME−Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
−−Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls−brdkt@usdoj.gov, usafls−hqdkt@usdoj.gov), Simon A. Gaugush (amaranto@carltonfields.com, sgaugush@carltonfields.com), Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
−−Non Case Participants:
−−No Notice Sent:

Message−Id:19530515@flsd.uscourts.gov
Subject:Activity in Case 9:19−mj−08526−WM USA v. Weeks Order on Motion to Continue
Content−Type: text/html

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 12/16/2019 at 11:55 AM EST and filed on 12/16/2019

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19−mj−08526−WM |
| **Filer:** | |
| **Document Number:** | 6(No document attached) |

**Docket Text:**
**PAPERLESS ORDER denying as moot [4] Motion to Continue as to Jobadiah Sinclair Weeks (1). Per DE[5], the matters were reset during Duty Court. Signed by Magistrate Judge William Matthewman on 12/16/2019. (spe)**

**9:19−mj−08526−WM−1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov

Simon A. Gaugush     sgaugush@carltonfields.com, amaranto@carltonfields.com

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

Case 9:19-mj-08526-WM Document 7 Filed 12/17/19 Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
______________________________________/

**NOTICE OF PERMANENT APPEARANCE**

Simon A. Gaugush of Carlton Fields, P.A. files this appearance as counsel for Defendant Jobadiah Sinclair Weeks. Counsel agrees to represent the defendant for trial and all proceedings in the U.S. District Court.

Counsel acknowledges responsibility to advise the defendant of the right to appeal, and to file a timely notice of appeal if requested to do so by the defendant. Counsel hereby states that this appearance is in conformity with the requirements of Local General Rule 11.1 and the Special Rules Governing the Admission and Practice of Attorneys.

*/s/ Simon A. Gaugush*
Simon A. Gaugush
Florida Bar Number 440050
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor
Tampa, Florida 33601
Telephone: (813) 223-7000
Email: sgaugush@carltonfields.com

*Counsel for Defendant Jobadiah Sinclair Weeks*

Case 9:19-mj-08526-WM Document 7 Filed 12/17/19 Page 2 of 2

I hereby acknowledge that I have read this form and consent to the representation of the above counsel.

________________________________
Defendant

Case 9:19-mj-08526-WM Document 8 Filed 12/17/19 Page 1 of 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No: 19-mj-8526-WM

United States of America
Plaintiff,
v.

Charging District's Case No. 19-877 (ccc)

Jobadiah Sinclair Weeks,
Defendant.
_______________________________________/

**WAIVER OF RULE 5 & 5.1 REMOVAL/IDENTITY HEARINGS**

I understand that I have been charged in another district, the **District of New Jersey.**

I have been informed of the charges and of my rights to:

(1) retain counsel or request the assignment of counsel if I am unable to retain counsel;
(2) an identity hearing to determine whether I am the person named in the charges;
(3) production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;
(4) a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.;
(5) a hearing on any motion by the government for detention;
(6) request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my rights to: **(check those that apply)**

- [X] An identity hearing and production of the warrant.
- [ ] A preliminary hearing.
- [ ] A detention hearing in the Southern District of Florida.
- [ ] An identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled to in this district. I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

[signature]
Defendant's Signature

Date: 12/17/2019

[signature]
William Matthewman
UNITED STATES MAGISTRATE JUDGE

MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls-brdkt@usdoj.gov, usafls-hqdkt@usdoj.gov), Simon A. Gaugush (amaranto@carltonfields.com, sgaugush@carltonfields.com), Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:19538345@flsd.uscourts.gov
Subject:Activity in Case 9:19-mj-08526-WM USA v. Weeks Attorney Appointment/Report Re: Counsel Hearing
Content-Type: text/html

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 12/17/2019 at 4:57 PM EST and filed on 12/17/2019

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19-mj-08526-WM |
| **Filer:** | |
| **Document Number:** | 9(No document attached) |

**Docket Text:**
**PAPERLESS Minute Entry for proceedings held before Magistrate Judge William Matthewman: Report Re Counsel Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Identity/Removal Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Detention Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Defendant present, sworn and advised of rights. Attorney Gaugush confirmed his retention as permanent counsel for matters in this district. The defendant waived identity/removal, form executed and the Court finds the waiver knowing and voluntary. Government requested pre-trial detention. Court took judicial notice of Indictment and PTS report. Government proceeded by proffer. Government Exhibits 1-3 admitted without objection (Exhibit 3 shall be sealed). Defense proffered and argued for release on bond. Defense exhibits 1-10 admitted without objection; defense exhibits 11-13 admitted over objection. Nathaniel Sinclair Weeks sworn and provided a statement. The Court ordered defendant detained. Written order to be issued; Warrant of Removal signed. Total time in court: 2 hour(s) : 18 minutes. Attorney Appearance(s): Aurora Fagan (AUSA); Simon A. Gaugush (Retained). Also present: Andrew Hinkes (Counsel for Defendant), Nathaniel Sinclair Weeks, Stephanie Weeks. (Digital 14:19:01) (spe)**

**9:19-mj-08526-WM-1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS-BRDKT@usdoj.gov, usafls-hqdkt@usdoj.gov

Case 9:19-mj-8526 NEF for Docket Entry 9 Filed 12/17/2019 Page 2 of 2

Simon A. Gaugush     sgaugush@carltonfields.com, amaranto@carltonfields.com

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

Case 9:19-mj-08526-WM Document 10 Filed 12/17/19 Page 1 of 1

AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

Southern DISTRICT OF Florida

United States of America

V.

Jobadiah Sinclair Weeks

## EXHIBIT AND WITNESS LIST

Case Number: 19-mj-8526-WM

| PRESIDING JUDGE | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|
| William Matthewman | Aurora Fagan | Simon Gaugush & Andrew Hinkes |
| TRIAL DATE (S) | COURT REPORTER | COURTROOM DEPUTY |
| 12/17/2019 | DAR: 14:19:01 | Stephanie Payne |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| 1 | | 12/17/2019 | Y | Y | Map of defendant's travel |
| 2 | | 12/17/2019 | Y | Y | List of defendant's travel |
| 3 | | 12/17/2019 | Y | Y | Copy of passport - EXHIBIT TO BE SEALED |
| | | | | | |
| | 1 | 12/17/2019 | Y | Y | Photographs of house - 11627 W. 7th Way, Arvada, CO 80005 |
| | 2 | 12/17/2019 | Y | Y | Estimate of worth of house - 11627 W. 7th Way, Arvada, CO 80005 |
| | 3 | 12/17/2019 | Y | Y | Photographs of cabin - 15200 County Road 353C, Buena Vista, CO 81211 |
| | 4 | 12/17/2019 | Y | Y | Estimate of worth of cabin - 15200 County Road 353C, Buena Vista, CO 81211 |
| | 5 | 12/17/2019 | Y | Y | Weeks Abroad travel blog |
| | 6 | 12/17/2019 | Y | Y | Photographs of Haiti |
| | 7 | 12/17/2019 | Y | Y | Photograph of Cambodia |
| | 8 | 12/17/2019 | Y | Y | Photograph of Moldova |
| | 9 | 12/17/2019 | Y | Y | Photograph of Mexico |
| | 10 | 12/17/2019 | Y | Y | Photograph of Bahamas |
| | 11 | 12/17/2019 | Y | Y | Letter of Reference (Jeff Sparrow) |
| | 12 | 12/17/2019 | Y | Y | Letter of Reference (McKinley Hlady) |
| | 13 | 12/17/2019 | Y | Y | Letter of Reference (Samuel Barlow) |
| | | | | | |
| | | | | | Nathaniel Sinclair Weeks sworn and provided testimony/statement |
| | | | | | |
| | | | | | |
| | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Page 1 of 1 Pages

Case 9:19-mj-08526-WM Document 11 Filed 12/20/19 Page 1 of 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-mj-08526-WM

United States of America,

v.

Jobadiah Sinclair Weeks,

Defendant.

_______________________________/

FILED BY ____ D.C.
DEC 20 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**PRETRIAL DETENTION ORDER**

Pursuant to 18 U.S.C. §§ 3142(b), (e), and (f), the Court hereby ORDERS Defendant Jobadiah Sinclair Weeks detained.

The Government urges the Court to order Defendant's pretrial detention because he is a substantial or serious risk of flight or nonappearance. After conducting a detention hearing in this case on December 17, 2019, the Court finds that no condition or combination of conditions will reasonably assure Defendant's appearance if he is released. Defendant must be detained as a serious risk of flight or nonappearance. The Court makes the following findings of fact with respect to this Order.

Factors:

**a) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.**

Defendant is charged by indictment with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and one count of conspiracy to offer and sell unregistered securities in violation of 18 U.S.C. § 371. If convicted of count one, he faces up to 20 years imprisonment.

Case 9:19-mj-08526-WM Document 11 Filed 12/20/19 Page 2 of 8

If convicted of count two, he faces up to 5 years imprisonment.

Although the offenses Defendant is charged with are not crimes of violence and do not involve narcotics, the charges are very serious and involve an alleged large-scale $722 million-dollar lengthy fraud involving cryptocurrency.

**b) The weight of the evidence against Defendant.**

The grand jury has issued an indictment, thereby finding that probable cause supports both counts. The weight of the evidence against Defendant is substantial. The Court takes judicial notice of the information in the Indictment [DE 1] and the Pretrial Services Report. The following evidence was established by the Indictment, exhibits introduced at the detention hearing, the Pretrial Services Report, and the Government's proffer.

Defendant is alleged to have promoted BitClub Network ("BCN"), which the Government alleges "was a worldwide fraudulent scheme that solicited money from investors in exchange for shares of pooled investment in cryptocurrency mining and that rewarded existing investors for recruiting new investors." [DE 1, ¶ 1(a)]. Specifically, per the Indictment, Defendant promoted BCN to potential investors and advised BCN's owners and operators on how to solicit investments from "sophisticated investors." Defendants also allegedly conspired to sell unregistered securities. In or around December 2015, the Government alleges that Defendant messaged one of BCN's owners and advised that:

> We really should have [September] stats and [October] stats and [November] stats. The sophisticated investors with a lot of cash are hesitant with putting in big cash because they want to see the mining contract, the receipt or title to the mining equipments [sic], proof that they own something in return, how much the mine made and what the mine paid out to each share holder so they can calculate what a share is worth etc. Bitclub pool doesn't tell us how many share holders have etc. Its not transparent enough for the big big money guys.

Case 9:19-mj-08526-WM Document 11 Filed 12/20/19 Page 3 of 8

*Id.* at ¶ 4(g)(xi). In or around June 2017, the Government alleges Defendant emailed one of his co-defendants, Matthew Brent Goettsche, observing that BCN "can't just 'sell' people mining hardware (shares) in Bitclub and then not use the money to buy equipment. Its not right. Bitclub makes 20% regardless of the price." *Id.* at ¶ 4(g)(xii). Further, the Government alleges that Defendant and his co-conspirators "encouraged U.S. investors to utilize a [Virtual Private Network] to obscure their true, U.S.-based [Internet Provider] addresses so that BCN and the Defendants could avoid detection and regulation by U.S. law enforcement." *Id.* at ¶ 5(g). The Government also alleges Defendant promoted BCN on the Internet, created promotional videos, and gave speeches and presentations to potential investors across the world.

**c) Defendant's history and characteristics.**

The Court takes judicial notice of the Indictment and the Pretrial Services Report. Defendant is a 38-year-old male who lives a largely nomadic international lifestyle. He is married with one 13-month-old child. He, his wife, and his child travel extensively throughout the world approximately ten months each year. For at least the past 20 years, Defendant has used his parents' address in Colorado, where he stays only sporadically, as his home address and does not have a permanent address of his own. Defendant travels frequently across the world to give speeches and lectures on cryptocurrency investing.

As part of his extensive travel, Defendant associates with numerous self-proclaimed "anarchists." He and other "anarchists" have discussed forming their own sovereign nation-state called "Libra Land." Investors in BCN were to receive automatic citizenship in Libra Land and the nation would trade primarily in Bitcoin. Further, Defendant has sought foreign citizenship in both St. Kitts, which has an extradition treaty with the United States, and Vanuatu, a small South

Case 9:19-mj-08526-WM Document 11 Filed 12/20/19 Page 4 of 8

Pacific island nation that has no extradition treaty with the United States. When attempting to obtain a foreign passport, Defendant wrote that he did not want his U.S. passport anymore. He also tried to obtain foreign citizenship for his wife and child. He was unsuccessful in obtaining citizenship from either country. However, Defendant endeavored on more than one occasion to obtain foreign citizenship and relinquish his U.S. citizenship. He has expressed strong dissatisfaction with the United States and has not filed any U.S. tax returns for 2014 through 2017.

Defendant also has a "diplomatic passport" from an alleged charitable organization he is a part of called "Worldwide Sports Network" and, when arrested, had a Mexican voter identification card.

Defendant's ties to both the District of New Jersey, where the Indictment was filed, and the Southern District of Florida, where he was arrested, are nil. He appears to have some ties to Colorado, since his mother and father live there, however, as noted above, he does not maintain a permanent residence anywhere in the United States.

Finally, Defendant's assets are not fully known and are somewhat surreptitious. Defendant has significant monetary holdings in cryptocurrency. He advised Pretrial Services that he owns a ranch with a fair market value of $2 million dollars, and approximately $250,000 in bitcoin. He did not advise Pretrial Services of his Mexican estate or the timeshare he allegedly owns. And, according to the Government, he has extensive assets in cryptocurrency totaling millions of dollars which are unaccounted for and which could support him if he chose to flee with his wife and child to a foreign jurisdiction. Records indicate he has a pending federal tax liability and failed to file federal tax returns for at least four years from 2014 through 2017.

Case 9:19-mj-08526-WM Document 11 Filed 12/20/19 Page 5 of 8

**d) Defendant's criminal history.**

Defendant's criminal history is limited but does show some history of substance abuse. In August 1999, Defendant was charged with resisting arrest, obstructing police, and assault battery. He was found guilty of the latter two offenses and sentenced to six months' probation. In May 2004, Defendant was charged with two counts of driving under the influence. However, the disposition of those charges is unknown. And finally, in March 2014 Defendant was again charged with driving under the influence. However, the charge was reduced to reckless driving and Defendant pleaded guilty.

**e) The likelihood of Defendant's appearance in court if released.**

The policy underlying the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant." *United States v. Price*, 773 F.2d 1526, 1527 (11th Cir. 1985) (per curiam). When the United States seeks to detain a criminal defendant pending trial based on his or her status as a flight risk, it must prove by a preponderance of the evidence that no condition or set of conditions will reasonably assure his or her presence at trial. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985); *see also United States v. Turner*, No. 19-8173-DLB, 2019 WL 1893109, at *2 (S.D. Fla. Apr. 29, 2019); *United States v. Zhang*, No. 19-cr-80056-Altman/Brannon, 2019 WL 1747197, at *3 (S.D. Fla. Apr. 15, 2019); *United States v. Chatman*, No, 16-8462-WM, 2016 WL 8258897, at *3 (S.D. Fla. Dec. 27, 2016); *United States v. Capolongo*, No. 16-8284-CR-Hurley/Hopkins, 2016 WL 4272371, at *4 (S.D. Fla. Aug. 10, 2016); *United States v. Ceballo*, No. 12-80211-CR-Hurley/Hopkins, 2012 WL 7050591, at *5 (S.D. Fla. Dec. 14, 2012).

The Court has carefully considered whether there is any condition or combination of

conditions that would reasonably assure Defendant's appearance if he is released, including electronic and GPS monitoring. However, "[t]he GPS system, while technologically sophisticated, is ultimately just another form of electronic surveillance, and 'monitoring equipment is easily rendered inoperative or become so by mechanical failure.'" *United States v. Benatar*, No. 02-CR-99, 2002 WL 31410262, at *3 (E.D.N.Y. Oct. 10, 2002) (quoting *United States v. Gotti*, 776 F.Supp. 666, 673 (E.D.N.Y. 1991)). "The GPS system of surveillance is imperfect, and even attentive monitoring leaves the possibility of several hours' delay between a defendant's departure and the beginning of an effective search." *United States v. Khanu*, 675 F.Supp.2d 69, 75 (D.D.C. 2009). "Neither electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant releasee." *United States v. Megahed*, 519 F.Supp.2d 1236, 1244 (M.D. Fla. 2007).

Defendant appears to be an individual with no allegiance to the United States and who has endeavored to obtain citizenship in a foreign country where he can avoid taxes and other societal restrictions. He has travelled throughout the world, visiting more than 100 countries, and is alleged to have perpetrated the alleged fraud while travelling. According to the Government, Defendant has access to private jets and, when he attempted to purchase a property in St. Kitts, he stated that $560 million dollars had travelled through his account. He associates with "anarchists" who could assist him if he decided to flee the United States. He also owns an estate in Mexico where he could flee to if so inclined.

In sum, Mr. Weeks is a defendant with insufficient ties to the United States who has expressed his desire to relinquish his U.S. passport and move overseas and who, according to the Government, has access to extensive assets which would allow him to flee and hide. Although

Case 9:19-mj-08526-WM Document 11 Filed 12/20/19 Page 7 of 8

Defendant's father stated he and his wife (Defendant's mother) would co-sign Defendant's bond and post their Colorado property as collateral, this gives the Court little comfort. If, as the Government alleges, Defendant has access to millions of dollars in cryptocurrency and other extensive assets, he could easily reimburse his parents for any financial loss they would suffer if he fled the United States.

Thus, the Court finds that there is a serious risk that Defendant will flee or fail to appear in court, if released. In light of the nature of the charged offenses; the substantial weight of the evidence against Defendant; the substantial prison term Defendant faces if convicted; Defendant's substance abuse history; his extensive foreign travel; his considerable financial resources; his association with self-proclaimed "anarchists;" his numerous attempts to gain foreign citizenship; his transient and nomadic lifestyle; his lack of any community ties to either the District of New Jersey or the Southern District of Florida; and the inadequacies of electronic monitoring, the Court finds that the Government has shown by a preponderance of the evidence that Defendant is a serious risk of flight or nonappearance and that there exist no conditions or combination of conditions which would reasonably assure Defendant's appearance in Court. Simply stated, the Court does not believe that Defendant would comply with any conditions of release set by the Court.

Accordingly, it is hereby **ORDERED** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Court directs that Defendant be afforded reasonable opportunity for private consultation with counsel; and the Court directs that, on order of a court of the United States or on request of an attorney for the

Case 9:19-mj-08526-WM Document 11 Filed 12/20/19 Page 8 of 8

Government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE and ORDERED** in chambers at West Palm Beach, Palm, Beach County, in the Southern District of Florida, this 20th day of December, 2019.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

Case 9:19-mj-08526-WM Document 12 Filed 12/20/19 Page 1 of 1

FILED BY [signature] D.C.
DEC 20 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No: 19-mj-8526-WM

United States of America
Plaintiff,

Charging District's Case No. 19-877 (cce)

v.

Jobadiah Sinclair Weeks,
Defendant.

**WARRANT OF REMOVAL**

REG#: 25950-104

A(n)
- ☐ Complaint
- ☑ Indictment
- ☐ Information
- ☐ Probation Violation Warrant
- ☐ Bench Warrant

having been filed in the District of New Jersey, charging the above-named defendant with 18:371; 18:1349, and the defendant having

☐ surrendered ☑ been arrested

in the Southern District of Florida, having had an initial appearance before the Court and having:

☑ waived further hearing ☐ been given a hearing in accordance with **Fed.R.Crim.P.5(c).**

having not posted the bail as set by the Court, the defendant is hereby committed to the custody of the United States Marshal for removal to the District where the charge is pending and delivery to the United States Marshal for that District or his lawfully authorized representative.

**DONE AND ORDERED** at West Palm Beach, Florida this 20th day of December, 2019.

DAR NO: 14:19:01

[signature]
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

c: AUSA
Defense
Pretrial Services
U.S. Marshal (2 certified copies)

Case 9:19-mj-08526-WM Document 13 Filed 12/20/19 Page 1 of 54

# U.S. District Court
# Southern District of Florida (West Palm Beach)
# CRIMINAL DOCKET FOR CASE #: 9:19−mj−08526−WM All Defendants
# *Internal Use Only*

Case title: USA v. Weeks
Other court case number: 19−877 (CCC) New Jersey

Date Filed: 12/11/2019
Date Terminated: 12/20/2019

---

Assigned to: Magistrate Judge William Matthewman

**Defendant (1)**

**Jobadiah Sinclair Weeks**
25950−104
*English; YOB: 1981*
*TERMINATED: 12/20/2019*

represented by **Simon A. Gaugush**
Carlton Fields, P.A.
4221 W. Boy Scout Blvd.
Suite 1000
Tampa, FL 33607
813−229−4227
Fax: 813−229−4133
Email: sgaugush@carltonfields.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| Removal of Indictment to New Jersey − 18: 1349, 371 | |

---

**Plaintiff**

1

Case 9:19-mj-08526-WM Document 13 Filed 12/20/19 Page 2 of 54

**USA** represented by **Aurora Fagan**
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
561−820−8711
Fax: 561−209−1787
Email: aurora.fagan@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/11/2019 | 1 | 4 | Magistrate Removal of Indictment from New Jersey Case number in the other District 19−877 (CCC) as to Jobadiah Sinclair Weeks (1). (kza) (Entered: 12/12/2019) |
| 12/11/2019 | 2 | 33 | PAPERLESS Minute Order for proceedings held before Magistrate Judge William Matthewman: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Jobadiah Sinclair Weeks held on 12/11/2019. The Court advised the defendant of the charges, possible maximum penalties and his rights. The Defendant informed the Court that he will hire an attorney. The Government requested pretrial detention anf three (3) days. Date of Arrest or Surrender: 12/11/2019. Total time in court: 15 minutes. Report Re: Counsel Hearing, Detention Hearing and Removal Hearing set for 12/16/2019 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. Attorney Appearance(s): AUSA Aurora Fagan. (Digital 11:32:08) Signed by Magistrate Judge William Matthewman on 12/11/2019. (kza) (Entered: 12/12/2019) |
| 12/16/2019 | 3 | 34 | NOTICE OF TEMPORARY ATTORNEY APPEARANCE: Simon A. Gaugush appearing for Jobadiah Sinclair Weeks (Gaugush, Simon) (Entered: 12/16/2019) |
| 12/16/2019 | 4 | 35 | Unopposed MOTION to Continue *Detention and Removal Hearing* re 2 Initial Appearance − Rule 5(c)(3)/Rule 40,,, by Jobadiah Sinclair Weeks. Responses due by 12/30/2019 (Attachments: # 1 Affidavit S. Gaugush Affidavit)(Gaugush, Simon) (Entered: 12/16/2019) |
| 12/16/2019 | 5 | 38 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge William Matthewman: Status Conference re: report re: counsel/detention/removal as to Jobadiah Sinclair Weeks held on 12/16/2019. (Detention Hearing reset for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate. Removal Hearing reset for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate. Report Re: Counsel Hearing set for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate.). Defendant present and sworn. Court confirmed with Defendant his desire to proceed with Mr. Gaugush as his attorney of choice; Court granted defense's request for additional time to determine permanent representation and prepare for detention and removal hearings. No opposition to continuance from government. Total time in court: 6 minutes. Attorney Appearance(s): Aurora Fagan (AUSA); Simon A. Gaugush (Temporary/Limited). (Digital 10:17:21) (spe) (Entered: 12/16/2019) |
| 12/16/2019 | 6 | 39 | PAPERLESS ORDER denying as moot 4 Motion to Continue as to Jobadiah Sinclair Weeks (1). Per DE 5 , the matters were reset during Duty Court. Signed |

2

Case 9:19-mj-08526-WM Document 13 Filed 12/20/19 Page 3 of 54

| | | | |
|---|---|---|---|
| | | | by Magistrate Judge William Matthewman on 12/16/2019. (spe) (Entered: 12/16/2019) |
| 12/17/2019 | 7 | 40 | NOTICE OF ATTORNEY APPEARANCE: Simon A. Gaugush appearing for Jobadiah Sinclair Weeks (Gaugush, Simon) (Entered: 12/17/2019) |
| 12/17/2019 | 8 | 42 | WAIVER of Rule 5 & 5.1 Removal/Identity Hearings by Jobadiah Sinclair Weeks. (spe) (Entered: 12/17/2019) |
| 12/17/2019 | 9 | 43 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge William Matthewman: **Report Re Counsel** Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Identity/Removal Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Detention Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Defendant present, sworn and advised of rights. Attorney Gaugush confirmed his retention as permanent counsel for matters in this district. The defendant waived identity/removal, form executed and the Court finds the waiver knowing and voluntary. Government requested pre−trial detention. Court took judicial notice of Indictment and PTS report. Government proceeded by proffer. Government Exhibits 1−3 admitted without objection (Exhibit 3 shall be sealed). Defense proffered and argued for release on bond. Defense exhibits 1−10 admitted without objection; defense exhibits 11−13 admitted over objection. Nathaniel Sinclair Weeks sworn and provided a statement. The Court ordered defendant detained. Written order to be issued; Warrant of Removal signed. Total time in court: 2 hour(s) : 18 minutes. Attorney Appearance(s): Aurora Fagan (AUSA); Simon A. Gaugush (Retained). Also present: Andrew Hinkes (Counsel for Defendant), Nathaniel Sinclair Weeks, Stephanie Weeks. (Digital 14:19:01) (spe) (Entered: 12/17/2019) |
| 12/17/2019 | 10 | 45 | COURT EXHIBIT and WITNESS LIST re: detention hearing on 12/17/2019 regarding Jobadiah Sinclair Weeks per DE 9 . (spe) (Entered: 12/17/2019) |
| 12/20/2019 | 11 | 46 | PRETRIAL DETENTION ORDER as to Jobadiah Sinclair Weeks. Signed by Magistrate Judge William Matthewman on 12/20/2019. *See attached document for full details.* (kza) (Entered: 12/20/2019) |
| 12/20/2019 | 12 | 54 | WARRANT OF REMOVAL ISSUED to District of New Jersey as to Jobadiah Sinclair Weeks. Closing Case for Defendant. Signed by Magistrate Judge William Matthewman on 12/20/2019. *See attached document for full details.* (kza) (Entered: 12/20/2019) |

3

Case 9:19-mj-08526-WM Document 13 Filed 12/11/2019 Page 1 of 2

FILED BY ___ D.C.

DEC 11 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**UNITED STATES OF AMERICA**

**v.**

**JOBADIAH SINCLAIR WEEKS**

**Case Number: 19-** 877 (CCC)

**WARRANT FOR ARREST**

To: The United States Marshal
and any Authorized United States Officer

**YOU ARE HEREBY COMMANDED** to arrest **JOBADIAH SINCLAIR WEEKS**

and bring him forthwith to the nearest magistrate to answer a

_X_ Indictment ____ Information ____ Complaint ____ Order of Court

____ Violation Notice ____ Probation Violation Petition

charging him with:

Count One:

knowingly and intentionally conspiring and agreeing with others to devise a scheme and artifice to defraud, and to obtain money and property from victims by means of false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1349.

Count Two:

knowingly and intentionally conspiring and agreeing with others to directly and indirectly willfully offer and sell unregistered securities, contrary to Title 15, United States Code, Sections 77e and 77x, in violation of Title 18, United States Code, Section 371.

Honorable Edward S. Kiel
**Name of Issuing Officer**

United States Magistrate Judge
**Title of Issuing Officer**

**Signature of Issuing Officer**

December 5, 2019 at Newark, NJ
**Date and Location**

19-8526-WM

RECEIVED

2017R01326/DVF/JLH

DEC 06 2019

AT 8:30 ____________ M
WILLIAM T. WALSH, CLERK

FILED

DEC 05 2019

AT 8:30 4:00 P M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| v. | : | |
| MATTHEW BRENT GOETTSCHE, [redacted] JOBADIAH SINCLAIR WEEKS, JOSEPH FRANK ABEL, and SILVIU CATALIN BALACI | : | Criminal Number: 19-877 (CCC) |
| | : | 18 U.S.C. § 371 |
| | : | 18 U.S.C. § 1349 |

FILED BY ____ D.C.

DEC 11 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**I N D I C T M E N T**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

**COUNT ONE**
(Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349)

1. At times relevant to this Indictment:

**Individuals and Entities**

a. BitClub Network ("BCN") was a worldwide fraudulent scheme that solicited money from investors in exchange for shares of pooled investments in cryptocurrency mining and that rewarded existing investors for recruiting new investors.

b. Defendant MATTHEW BRENT GOETTSCHE created and operated BCN.

c. Defendant [redacted] created, operated, and promoted BCN.

Case 9:19-mj-08526-WM Document 13 Filed 12/21/19 Page 3 of 24

d. Defendant JOBADIAH SINCLAIR WEEKS promoted BCN.

e. Defendant SILVIU CATALIN BALACI created and operated BCN. BALACI also served as programmer for BCN.

**Relevant Terminology**

f. "Cryptocurrency" was a digital representation of value that could be traded and functioned as a medium of exchange; a unit of account; and a store of value. Its value was decided by consensus within the community of users of the cryptocurrency.

g. "Bitcoin" was a type of cryptocurrency. Bitcoin were generated and controlled through computer software operating via a decentralized, peer-to-peer network. Bitcoin could be used for purchases or exchanged for other currency on currency exchanges.

h. "Mining" was the way new bitcoin were produced and the way bitcoin transactions were verified. Individuals or entities ran special computer software to solve complex algorithms that validated groups of transactions in a particular cryptocurrency. Under the bitcoin protocol, which fostered a competition to verify transactions for inclusion on the public bitcoin ledger, known as the "blockchain," the first miner to solve the algorithm was rewarded with a preset amount of newly-issued bitcoin.

i. "Hash rate" was the measure of the speed at which a mining machine operated by way of computer processing power that was applied by

Case 9:19-mj-08526-WM Document 13 Filed 12/20/19 Page 4 of 34

miners to solve the algorithms and harvest new currency. Hash rate was expressed generally as the number of calculations mining computers could perform per second. In general, the greater the hash rate, the greater the miner's chance to solve the algorithm and be rewarded the newly-issued bitcoin.

j. "Mining pools" were combinations of cryptocurrency miners who consolidated their computing power to achieve greater hash rate.

k. A "virtual private network" ("VPN") allowed an internet user to secure his or her internet connection and anonymize internet use by obscuring and concealing the user's true personal identity and location information.

**The Conspiracy**

2. From at least in or around April 2014 through in or about December 2019, in Passaic County, in the District of New Jersey, and elsewhere, defendants

**MATTHEW BRENT GOETTSCHE,**
**[REDACTED]**
**JOBADIAH SINCLAIR WEEKS, and**
**SILVIU CATALIN BALACI,**

knowingly and intentionally conspired and agreed with each other and others to devise a scheme and artifice to defraud, and to obtain money and property from victims by means of false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to

defraud, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

**The Goal of the Conspiracy**

3. It was the goal of the conspiracy for the GOETTSCHE, [redacted] WEEKS, BALACI, and others (the "Fraud Co-Conspirators") to enrich themselves by soliciting and causing others to solicit investments in BCN through materially false and fraudulent pretenses, representations, promises, and omissions.

**Manner and Means of the Conspiracy**

4. It was part of the conspiracy that:

a. GOETTSCHE, [redacted] WEEKS, and others promoted and caused to be promoted investments in BCN shares as a pooled investment of bitcoin mining proceeds.

b. GOETTSCHE, BALACI, and others discussed and understood that BCN's purported cryptocurrency mining would not be profitable, but would serve to induce investors to purchase BCN memberships and shares in BCN's purported mining pools.

c. The Fraud Co-Conspirators made and caused others to make materially false and fraudulent pretenses, representations, and promises to,

Case 9:19-mj-08526-WM Document 13 Filed 12/20/19 Page 60 of 234

and to conceal material facts from, investors regarding aspects of BCN's investment products, including the information that was displayed to BCN's investors as proof of "bitcoin mining earnings" that purportedly were generated through BCN's bitcoin mining pool.

d. GOETTSCHE, BALACI, and [redacted] manipulated the numbers that were displayed to BCN investors as "mining earnings" to promote the sale of bitcoin mining shares in BCN and to convince BCN members to invest additional funds in other BCN cryptocurrency-related products.

e. Based on the materially false and fraudulent pretenses, representations, promises, and omissions that the Fraud Co-Conspirators made and caused to be made to investors, the Fraud Co-Conspirators, both individually and through BCN, received funds from investors, including through cash, check, wire transmissions, and cryptocurrency transfers.

f. The Fraud Co-Conspirators, through BCN, obtained at least $722 million from investors.

g. The Fraud Co-Conspirators and others discussed the fraudulent scheme over email and Internet chat, posted videos encouraging investment in BCN, and used the BCN website to promote the fraudulent scheme, including, for example, the following:

    i. In or around June 2014, GOETTSCHE and BALACI exchanged emails to discuss the formation of BCN. During this exchange, BALACI emailed GOETTSCHE: "The margins from the MLM [multi-level marketing] will also be insane cause I have seen your skill at constructing attractive matrixes that have almost 0 chance of paying more than 50% of max for 99% of the people :D."

ii. In or around July 2014, as part of an online chat exchange, BALACI told GOETTSCHE that BCN's target audience would be "the typical dumb MLM investor."

iii. In or around October 2014, via Internet chat, GOETTSCHE and BALACI discussed posting fake mining statistics at the inception of BCN to promote the sale of shares in BCN:

| | |
|---|---|
| GOETTSCHE | but we may need to fake it for the first 30 days while we get going |
| BALACI | sure |
| BALACI | we can do that |
| GOETTSCHE | it needs to look real though 😃 |
| GOETTSCHE | so need a bit of your magic touch on it |
| BALACI | look real how? We fake real revenue numbers and show them in account daily |
| GOETTSCHE | and we dont want to fake it too good so that when we need to back it down it drops off |
| GOETTSCHE | terminolgy |
| GOETTSCHE | explanation of what is happening |
| GOETTSCHE | inconsistent numbers daily so its not perfect |
| GOETTSCHE | all kinds of stuff |
| BALACI | inconsistent numbers IS real |
| GOETTSCHE | people think we are not legit or are weary so we need to be careful rolling this out |

| BALACI | if we pay consistent numbers it will be fake |
|---|---|
| GOETTSCHE | i know... thats what I am saying, make the numbers inconsistent |
| BALACI | yeah |
| BALACI | will make it real |

iv. In or around October 2014, GOETTSCHE and BALACI discussed how to calculate fake mining earnings for investors. BALACI stated, "I guess most people do not know only 40% is used for mining and the rest for commissions," to which GOETTSCHE replied, "the leaders know . . . its the sheep that dont."

v. In or around January 2015, GOETTSCHE and BALACI discussed the need to show investors proof of mining power to promote investment in BCN. GOETTSCHE offered BALACI $50,000 to devise a way for BCN to show purported "proof" of a BCN pool without BCN actually having mining power:

| GOETTSCHE | got a challenge for you |
|---|---|
| GOETTSCHE | $50k bonus |
| GOETTSCHE | to get us "proof" of our own pool |
| GOETTSCHE | by end of month |

. . . .

| BALACI | "proof" ? as in without you having mining power? |
|---|---|
| BALACI | and with you riding me hard avbout everything else ☺ |
| GOETTSCHE | having our own node |
| GOETTSCHE | yep |
| GOETTSCHE | its a big one |
| GOETTSCHE | Ill put together full details |
| GOETTSCHE | to make it achievable |
| BALACI | ok |
| GOETTSCHE | but that will instantly net us 10x that |

| BALACI | so you want our own pool |
|---|---|
| GOETTSCHE | yes |
| GOETTSCHE | dude |
| BALACI | and then we get miners to mine there? |
| GOETTSCHE | most of these idiots |
| BALACI | ok |
| GOETTSCHE | have no idea |
| BALACI | by the end of the month... |
| GOETTSCHE | they just want to make sure we can verify SOMETHING |
| BALACI | 50k bonus |
| BALACI | deal |
| GOETTSCHE | that is the #1 question |
| GOETTSCHE | are you really mining? |
| BALACI | well, having a pool is 1 thing.... showing mining power is a totally different animal |
| BALACI | I can get you the pool! |
| BALACI | we can then offer 5% mining bonus to miners |
| BALACI | that will get us power |
| GOETTSCHE | with a pool, we can get miners to join |
| BALACI | then we can divert some of that |

vi. In or around January 2015, GOETTSCHE told BALACI, "we are building this whole model on the backs of idiots" and to "prove the mining . . . just means convincing the morons ☺."

vii. In or around January 2015, GOETTSCHE and BALACI discussed developing fake "proof" and "statistics" to display to potential BCN investors to promote investment in BCN:

| GOETTSCHE | how can we get some shiny shit for members? |
|---|---|
| GOETTSCHE | oh also |
| GOETTSCHE | need to bump up the payout |
| GOETTSCHE | its really low |
| BALACI | what shiny shit you want exactly? |
| BALACI | ok |

| GOETTSCHE | the stats you just showed me |
|---|---|

. . . .

| BALACI | ?? fake a pool |
|---|---|
| BALACI | or? |
| GOETTSCHE | yea |
| GOETTSCHE | real stats on fake numbers |
| GOETTSCHE | we will slowly introduce real numbers |
| BALACI | uhmmm ok, but to make it believable will not be easy |
| BALACI | cause we need to code variance in |
| BALACI | will try to get something up |
| GOETTSCHE | Im telling you man |
| GOETTSCHE | some stats like this |
| GOETTSCHE | a picture with our banners |
| GOETTSCHE | and some proof in the blockchain |
| GOETTSCHE | and look the fuck out!! |
| GOETTSCHE | its over |

viii. In or around February 2015, GOETTSCHE directed BALACI to manipulate and falsely increase the "mining earnings" figures displayed to investors on their BCN online accounts:

| GOETTSCHE | bump up the daily mining earnings starting today by 60% |
|---|---|

. . . .

| BALACI | 60%? |
|---|---|
| BALACI | wow |
| BALACI | that is not sustainable, that is ponzi teritori and fast cash-out ponzi |
| BALACI | but sure |
| GOETTSCHE | yea they have not been bumped in a long time |
| BALACI | ok |
| GOETTSCHE | we can push them back down, but we need a boost |
| BALACI | you do realize you need to pay for like 1000 days technically? |
| BALACI | kk |
| GOETTSCHE | we will dilute over time |
| GOETTSCHE | members will think its due to strong growth |

Case 9:19-mj-03526-WM Document 19 Filed 12/26/19 Page 114 of 239

| | |
|---|---|
| GOETTSCHE | but right now the payout does not even break people even after 1,000 days |
| GOETTSCHE | we need to look like we will break them even in 9-12 months |
| GOETTSCHE | and then start to curtail it from there |
| GOETTSCHE | just bump it by 60%, im putting together an update about newly installed equip and that we will be showing mining proof in the next week |

ix. In or around August 2015, BALACI told GOETTSCHE, "I noticed you drastically decreased mining payments and people started complaining[.]" GOETTSCHE agreed, "yea."

x. From at least as early as in or around August 2015 through in or around November 2019, BCN falsely claimed on its website that "Our pool was established in October 2014 as a solo mining pool that was exclusive to BitClub Network members," when, in fact, BCN lacked a mining pool exclusive to its members in October 2014.

xi. In or around December 2015, WEEKS messaged [REDACTED] and another individual about BCN and stated:

> We really should have sep stats and oct stats and nov stats. The sophisticated investors with a lot of cash are hesitant with putting in big cash because they want to see the mining contract, the receipt or title to the mining equipments, proof that they own something in return, how much the mine made and what the mine paid out to each share holder so they can calculate what a share is worth etc. Bitclub pool doesn't tell us how many share holders we have etc. Its not transparent enough for the big big money guys.

xii. In or around June 2017, WEEKS emailed GOETTSCHE and [REDACTED] a business opportunity involving BCN, and observed: "We (Bitclub)

can't just 'sell' people mining hardware (shares) in Bitclub and then not use the money to buy equipment. Its not right. Bitclub makes 20% regardless of the price."

xiii. In or around September 2017, GOETTSCHE and [REDACTED] exchanged emails regarding a new scheme to encourage current BCN investors to reinvest their shares into another BCN investment product. GOETTSCHE suggested that BCN manipulate mining earnings:

> We close the current pool to new shares, we call it the Early Adopters Pool or Legacy Pool or some shit like this. We continue to pay out for the total of the life of the pool but no more partial shares or new shares allowed in. This means the day we close it we have 1,000 days that we calculate out and put on autopilot.
>
> . . . .
>
> Here is my current plan... (in my head)
>
> 1. Limit sales by the hour to do $50 mil per month
>
> 2. Drop mining earnings significantly starting now
>
> . . . .
>
> 8. We retire RAF!!! (rich as fuck)

[REDACTED] responded to this plan: "I like it. Call me when you can."

All in violation of Title 18, United States Code, Section 1349.

**COUNT TWO**

(Conspiracy to Offer and Sell Unregistered Securities – 18 U.S.C. § 371)

1. Paragraphs 1 and 4 of Count One of this Indictment are re-alleged and incorporated herein.

2. At times relevant to Count Two of this Indictment:

a. Defendant JOSEPH FRANK ABEL promoted BCN.

**BCN**

b. BCN held itself out as a profit-seeking business venture. Investors paid a $99 membership fee to be a part of BCN and then were provided the option to pay additional money for shares in what BCN purported were three mining pools. According to BCN's website, investors could "earn passive income" through investment in the pools. Specifically, BCN represented:

> You can purchase a share in 3 different mining pools and all Bitcoin mined from each pool will be paid and shared with all members eligible for the pool. You pay either $500, $1,000, or $2,000 worth of Bitcoin for a share of the mining pool.
>
> With your purchase you will receive Bitcoin for 600 days! A percentage of all Bitcoin mined and paid to you will be used to pay for mining costs and to purchase new mining equipment.
>
> *No Sponsoring Required to Earn Mining Pool Payouts

Case 9:19-mj-08526-WM Document 13 Filed 12/26/19 Page 14 of 23

c. BCN further described the different investment options:

Mining Pool #1 -- -- Each share cost $500 USD that will be used to purchase new Bitcoin mining servers. All Bitcoin earned will be split among all members of this pool and paid out daily. Each share earns 50% profit with the other 50% being used to fund the mining operation and to purchase additional mining shares.

Mining Pool #2 -- Each share cost $1,000 USD and just like Pool #1 the total Bitcoin earned will be split among all members in the pool and paid out. Each share earns 60% profit with the other 40% being used to fund the mining operation and to purchase additional mining shares.

Mining Pool #3 -- Each share cost $2,000 USD and the total Bitcoin earned will be split among all members in the pool and paid out. Each share earns 70% profit with the other 30% being used to fund the mining operation and to purchase additional mining shares.

d. BCN represented to investors that BCN would pool investor money together to sustain, among other things, bitcoin mining pools, including by purchasing mining equipment and computer power and by engaging in cryptocurrency mining. On its website, BCN further stated that BCN "use[s] our leverage and massive purchasing power to strategically buy mining hardware at the lowest prices and share in all the profits produced."

e. BCN represented to investors that investors' mining returns would be calculated based on the mining success of the collective operations for each of the pools. BCN represented that purchases of shares in the mining

pools would determine a BCN member's allocation of mining pool profits, with more shares leading to a greater allocation of the mining pool profits. BCN's website displayed the following illustration of how BCN investors would earn profit from their investments in shares of the purported bitcoin mining pools:

> Example: Using Mine #1, if the total Bitcoin mined for the day = 1 BTC and there are 100 shares outstanding then each share would earn .01 BTC. From this total 50% of it would be paid directly to member as profit (.005 BTC) and the other 50% (.005 BTC) would be used to fund the mining operation costs and to purchase additional shares.
>
> So if the value of 1 Bitcoin = $500 USD and you have 1 share then you would earn $5 USD (.01 BTC) of which $2.50 is paid to you and $2.50 is used to purchase an additional share on your behalf. In this case you would purchase an additional .005 shares with your $2.50 and you would have a total of 1.005 shares going into the next day that you are now earning on.

f. BCN represented that its "team" would control, manage, and operate the bitcoin mining, while investors would share in the pro-rata distribution of profits derived from the bitcoin mining pools. On its website, BCN claimed that it was not owned by any one person, but instead was

> a team of experts, entrepreneurs, professionals, network markers, and programming geeks who have all come together to launch a very simple business around a very complex industry. Anyone can join BitClub and begin earning a passive income by taking advantage of our expertise in Bitcoin mining and other Bitcoin related services.

Case 9:19-mj-08526-WM Document 13 Filed 12/20/19 Page 19 of 230

g. Shares in BCN were "securities" as that term is defined by Title 15, United States Code, Section 77b(a)(1).

h. BCN did not file a registration statement to register shares of BCN with the U.S. Securities and Exchange Commission (the "SEC").

i. BCN promoted and sold shares of its mining pools both in the United States, including in New Jersey, and abroad.

j. In or around August 2017, BCN admitted in an investor update that "Bitcoin might be a security regulated by the SEC, [and] Bitcoin mining could potentially be a security[,]" yet did not register with the SEC.

**The Conspiracy**

3. From in or about 2014 through in or about December 2019, in Passaic County, in the District of New Jersey, and elsewhere, defendants

**MATTHEW BRENT GOETTSCHE,**
[redacted]
**JOSEPH FRANK ABEL,**
**JOBADIAH SINCLAIR WEEKS, and**
**SILVIU CATALIN BALACI,**

knowingly and intentionally conspired and agreed with each other and others to directly and indirectly willfully offer and sell unregistered securities, contrary to Title 15, United States Code, Sections 77e and 77x.

**Goal of the Conspiracy**

4. The goal of the conspiracy was for GOETTSCHE, [redacted] ABEL, WEEKS, BALACI, and others (the "Promotion Co-Conspirators") to, directly and

Case 9:19-mj-08526-WM Document 18 Filed 12/26/19 Page 20 of 250

indirectly, willfully offer and sell securities in BCN without filing a registration statement with the U.S. Securities and Exchange Commission, and use the means and instruments of transportation and communication in interstate commerce and the mails in connection with the offer and sale, for the purpose of enriching themselves and others.

**Manner and Means of the Conspiracy**

5. It was part of the conspiracy that:

a. GOETTSCHE, [redacted] WEEKS, ABEL, and others directly and indirectly took money from investors in exchange for membership in BCN and as investment for shares of mining pools that BCN purported to own and operate.

b. GOETTSCHE, [redacted] BALACI, and others created and displayed, and caused to be created and displayed, content on BCN's websites to promote the sale of shares in BCN's purported mining pools.

c. [redacted] ABEL, WEEKS, and others promoted the sale of shares in BCN through discussions with potential investors via the Internet and by creating and posting videos on the Internet.

d. [redacted] ABEL, WEEKS, and others promoted the sale of BCN shares by giving speeches and making presentations in the United States, including in New Jersey, and around the world.

e. GOETTSCHE, [redacted] WEEKS, ABEL, and others induced

Case 3:19-mj-03328-WM Document 13 Filed 12/26/19 Page 21 of 230

investors to pay for membership in BCN and to pay for shares in the purported profits of cryptocurrency mined from pools which BCN purported to manage on behalf of its members.

f. GOETTSCHE, [REDACTED] WEEKS, ABEL, and others represented to investors that buying shares of BCN's mining pools would allow investors to profit from mining cryptocurrency without the expense and expertise that would be required to purchase and maintain their own cryptocurrency mining equipment.

g. ABEL, WEEKS, and others encouraged U.S. investors to utilize a VPN to obscure their true, U.S.-based IP addresses so that BCN and the Defendants could avoid detection and regulation by U.S. law enforcement.

**Overt Acts**

6. In furtherance of the conspiracy and to effect the object of the conspiracy, the Promotion Co-Conspirators committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere.

a. In or around September 2014, [REDACTED] exchanged emails with an individual about BCN, including whether BCN was required to register its shares with the SEC.

b. In or around January 2015, BALACI informed GOETTSCHE that the artificially high mining payouts that BCN was purportedly making to

Case 9:19-mj-08526-WM Document 13 Filed 12/26/19 Page 22 of 230

its early investors, which was done to promote further investment in BCN, were not sustainable:

> [W]e started paying a shitload of money, totally unsustainable amount! That was because you wanted to attract people initially. We are still paying unsustainable amounts each single day, they are still high! Amounts have constantly dropped every day with minor jumps up. But as it stands now, we still pay a lot more than what should be paid if we were to do it in a sustainable manner. Keep in mind that only 40% is generating mining commissions (well, 40% is allocated to mining the rest being commissions for binary and levelup).
>
> So, as a conclusion, based on the mining allocation % and time frame of the share validity I think the payments are still unsustainable and too high.

In response, GOETTSCHE instructed:

> [O]k well, lets just continue to back it down gradually... We need a big catalyst because we want people to be buying right now in droves while the price is low so once this email thing is ready we will come up with a good campaign. The key is to grow very fast over the next 90 days and then hope the price shoots up while keeping the mining relatively the same.

c. In or around February 2015, BALACI and GOETTSCHE discussed the need to provide its investors and potential investors purported "proof" that BCN was mining bitcoin to promote further investment in BCN:

| | |
|---|---|
| GOETTSCHE | all we need is proof man |
| GOETTSCHE | dont need a rock solid plan |
| GOETTSCHE | just proof! |
| BALACI | ok |
| BALACI | will write a doooc today |

Case 9:19-mj-08526-WM Document 13 Filed 12/26/19 Page 23 of 239

| | |
|---|---|
| BALACI | on how members can check proof RIGHT now! |
| BALACI | based on the address you sent me |
| BALACI | will write a step-by-step |
| BALACI | with screenshots |
| GOETTSCHE | think of it like this... for every 10k we spend in proving our mining we make 20k back |
| GOETTSCHE | cool |
| BALACI | 😀 |
| BALACI | I do have one request also |
| BALACI | past middle of Feb and nothing was paid from that 50k bonus... I promised some of it downline also to motivate people to meet the deadline! Please send like 28.5k (half of the nbonus + 3.5k from the last payment). |
| GOETTSCHE | wasnt that bonus for a working pool? |
| BALACI | you are shitting me, right? |
| BALACI | the pool was done like on 20th Jan |
| BALACI | you inspected it also, it was live |
| BALACI | working |
| BALACI | mining power was missing which still is |
| GOETTSCHE | I guess our definition of "working" differs |
| BALACI | not my fault for that |
| BALACI | what? |
| GOETTSCHE | can I get someone to use it? |
| BALACI | dude, I do software I do not make mining power appear out of thin air |

d. In or around October 2015, ABEL sent [redacted] an article titled "Onecoin Abandons US Operations," which stated, among other things:

> So what's the real reason OneCoin are abandoning the US?
>
> Well, the mention of the SEC is a pretty solid giveaway.
>
> OneCoin offer unregistered securities globally, with newly invested funds used to pay off existing investors.

e. In or around November 2015, WEEKS prepared a video that was uploaded to the Internet, in which WEEKS promoted the sale of shares in

BCN, explaining that "right now we're finding about ten thousand dollars a day in bitcoin," and that "whatever the mine finds each day is evenly disbursed in a daily dividend to our shareholders."

f. In or around March 2016, ABEL prepared a webinar video about BCN, which was posted onto the Internet. This webinar promoted investment in BCN and represented, among other things:

> [W]e've looked at all the people who joined about five hundred days ago and most of us are making almost two and a half times more than we did when [we] started. . . . When we mine, you get paid. All the time we make money, you get paid and all of our system is third party validated. It is, literally, like being in the public market.

g. In or around April 2016, GOETTSCHE and [redacted] discussed the fact that U.S.-based individuals had invested in BCN.

h. In or around May 2016, ABEL told WEEKS that ABEL was traveling to California to promote investment in BCN.

i. In or around November 2016, [redacted] posted a video promoting investment in BCN. [redacted] represented, among other things:

> [A]nd, the beautiful thing about this is that, if no more new people join BitClub Network, it's okay because we've already bought the equipment, we're already mining bitcoin. If we don't get any more that join, we're still gonna be mining bitcoin, everybody is gonna keep getting paid over, and over, and over, and over, and over again. It is not going to stop.
>
> . . . . [E]verything is bitcoin that we're doing here, it's transparent. We can't hide this. You guys have access

Case 9:19-mj-08526-WM Document 13 Filed 12/26/19 Page 225 of 230

to this. You can see that what we're saying is true, we can't fake this. So, I hope that makes sense to everybody. That we have the most transparent company in the history of the world that I've ever seen. Maybe something will be more transparent but this is pretty close to the top of transparent. . . .

. . . .

So if you invest in a gold mining operation, you're not gonna go start digging holes, the gold miners dig up the gold, they just give you your gold every single day. This is the same kind of thing. So, if you put that same 3,599 in to mining with us, I think three years from now, you could end up with between anywhere from 15, and I'm gonna be very conservative here, 15 to 25 bitcoin. I think it could be a lot higher than this but I'm just gonna call it 15 to 25 bitcoin. If we're right and you end up getting between 15 to 25 bitcoin over the next three years. You're talking about if the price is at 10,000, that's between 150 and 250,000 dollars for a 3,599 dollar investment.

. . . .

So a portion of everybody's bitcoin that you're mining, has to go back in to help buying new equipment so uh pool one 50 percent minimum has to go back in, pool two, 40 percent, pool three, 30 percent. What does that mean? That means that you're gonna end up having more and more and more shares in all of the pools. So, even though you get started and you end up using your days, it doesn't matter 'cuz you're gonna end up having shares that still have a thousand days attached to them. So, this is pay one time, but get paid forever, and ever, and ever, and ever. You're never going to run out of shares. And, if you do refer other people every time that they make a repurchase, you're getting paid again, and again, and again, and again on all of those people. That's what's just beautiful about all of this.

Case 9:19-mj-08526-WM Document 19 Filed 12/26/19 Page 23 of 23

j. In or around March 2017, ABEL traveled to New Jersey to promote the sale of shares in BCN.

k. In or around August 2017, ABEL prepared a video that was posted on the Internet in which ABEL promoted the sale of shares in BCN and represented, among other things:

> [W]hat we have done is create a very unique window of opportunity for our members um here in America and around the world um, we no longer service the United States, as she told you that, and she'll explain to you guys how to get around that whole process to keep yourself uh 100% legit.

l. In or around October 2017, WEEKS traveled to Florida to promote the sale of shares in BCN.

m. In or around January 2018, ABEL participated in a recorded Internet video session, in which ABEL instructed U.S.-based investors how to use a VPN to access BCN's websites.

n. In or around March 2018, ABEL prepared a video and caused it to be posted on the Internet, promoting BCN, in which ABEL stated, "we are, what they call in the bitcoin network, too big to fail. . . . It's important that you understand that. We're too big to fail."

o. In or around March 2018, [redacted] emailed ABEL an article addressing U.S. securities regulation. The article stated, among other things:

> In my almost ten years of covering the industry, I've come to realize that if an MLM company tries to convince you they're not selling securities – then they

Case 9:19-mj-08536-WM Document 13 Filed 12/26/19 Page 24 of 23

> probably are.
>
> That's because the securities law with respect to MLM investment opportunities is pretty clear-cut: MLM + passive ROI = security.

All in violation of Title 18, United States Code, Section 371.

Case 9:19-mj-08526-WM Document 13 Filed 12/12/19 Page 23 of 23

## FORFEITURE ALLEGATION AS TO COUNT ONE

1. As the result of committing the offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), as alleged in Count One of this Indictment, defendants

**MATTHEW BRENT GOETTSCHE,**
[redacted]
**JOBADIAH SINCLAIR WEEKS, and**
**SILVIU CATALIN BALACI,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the wire fraud conspiracy offense, and all property traceable thereto, including, but not limited to the Specific Property listed in Attachment A to this Indictment.

**Substitute Assets Provision**

2. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

A True Bill.

CRAIG CARPENITO
United States Attorney

Case 9:19-mj-08526-WM Document 13 Filed 12/26/19 Page 230 of 234

## ATTACHMENT A

a. RBC Wealth Management account number [redacted]2600 in the name of Getch Holdings LLC;

b. RBC Wealth Management account number [redacted]4535 in the name of Getch Foundation;

c. RBC Wealth Management account number [redacted]0125 in the name of Getch Holdings LLC Construction Fund; and

d. Any and all ownership interest held in the name, on behalf or for the benefit of Matthew Goettsche, Gobit LLC and/or Getch 2021 LLC in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates and joint ventures, including but not limited to:

i. Orbesehc Industrial LLC

ii. HIIT Health LLC

(collectively, the "Specific Property").

CASE NUMBER: 19-cr-877-CCC

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

MATTHEW BRENT GOETTSCHE,
[redacted]
JOBADIAH SINCLAIR WEEKS,
JOSEPH FRANK ABEL, and
SILVIU CATALIN BALACI

INDICTMENT FOR
18 U.S.C. § 371
18 U.S.C. § 1349

A True Bill

CRAIG CARPENITO
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

DAVID W. FEDER
ANTHONY P. TORNTORE
JAMIE L. HOXIE
*ASSISTANT U.S. ATTORNEY*
*NEWARK, NEW JERSEY*
*(973) 645-2700*

USA-48AD 8
(Ed. 1/97)

Case 9:19-mj-08526-WM Document 13 Filed 12/26/19 Page 232 of 250

**THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY**

DEFENDANT'S NAME: Jobadiah Sinclair Weeks

ALIAS: Joby

LAST KNOWN RESIDENCE: 11627 W. 74th Way, Arvada, Colorado, 80005

LAST KNOWN EMPLOYMENT: ______

PLACE OF BIRTH: Colorado, United States

DATE OF BIRTH: 8/25/1981

SOCIAL SECURITY NUMBER: 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

HEIGHT: 6'2" WEIGHT: 165

SEX: M RACE: White

HAIR: Brown EYES: Green

SCARS, TATTOOS, OTHER DISTINGUISHING MARKS: ______

FBI NUMBER: 339747LB6

STATE NUMBER: ______

COMPLETE DESCRIPTION OF AUTO: ______

INVESTIGATIVE AGENCY AND ADDRESS: FBI, West Covina Resident Agency, 1050 Lakes Drive, Suite 350, West Covina, California 91790

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov,
sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls-brdkt@usdoj.gov, usafls-hqdkt@usdoj.gov),
Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
--Non Case Participants: Federal Public Defender (fls_ecf@fd.org)
--No Notice Sent:

Message-Id:19522486@flsd.uscourts.gov
Subject:Activity in Case 9:19-mj-08526-WM USA v. Weeks Initial Appearance - Rule
5(c)(3)/Rule 40
Content-Type: text/html
```

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 12/12/2019 at 2:37 PM EST and filed on 12/11/2019

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19−mj−08526−WM |
| **Filer:** | |
| **Document Number:** | 2(No document attached) |

**Docket Text:**
**PAPERLESS Minute Order for proceedings held before Magistrate Judge William Matthewman: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Jobadiah Sinclair Weeks held on 12/11/2019. The Court advised the defendant of the charges, possible maximum penalties and his rights. The Defendant informed the Court that he will hire an attorney. The Government requested pretrial detention anf three (3) days. Date of Arrest or Surrender: 12/11/2019. Total time in court: 15 minutes. Report Re: Counsel Hearing, Detention Hearing and Removal Hearing set for 12/16/2019 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. Attorney Appearance(s): AUSA Aurora Fagan. (Digital 11:32:08) Signed by Magistrate Judge William Matthewman on 12/11/2019. (kza)**

**9:19−mj−08526−WM−1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
_______________________________________/

**NOTICE OF LIMITED APPEARANCE**

Simon A. Gaugush of Carlton Fields, P.A. notices his appearance as counsel for Defendant Jobadiah Sinclair Weeks for the limited purpose of representing the Defendant at the Detention and Removal Hearing currently scheduled for December 16, 2019. The undersigned requests that all correspondence and pleadings be directed to him.

Dated: December 16, 2019

*/s/ Simon A. Gaugush*

Simon A. Gaugush
Florida Bar Number 440050
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor
Tampa, Florida 33601
Telephone: (813) 223-7000
Email: sgaugush@carltonfields.com

*Counsel for Defendant Jobadiah Sinclair Weeks*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
_____________________________________/

**DEFENDANT'S UNOPPOSED MOTION TO CONTINUE DETENTION AND REMOVAL HEARING**

Pursuant to 18 U.S.C. § 3142(f), Defendant Jobadiah Sinclair Weeks, by and through the undersigned counsel, hereby moves for a brief continuance of the Detention and Removal Hearing currently scheduled for December 16, 2019 at 10:00 a.m. In support of this motion, Defendant states that he has recently retained the undersigned counsel in this matter, and counsel requires a brief continuance in order to adequately prepare for the hearing. Pursuant to Local Rule 7.6, an affidavit setting forth a showing of good cause is attached as Exhibit 1. Counsel for the United States consents to a brief extension, until the afternoon of December 17, 2019, to conduct the hearing.

**CERTIFICATE OF CONFERRAL**

In accordance with Local Rule 88.9, counsel for the respective parties have conferred, and counsel for the United States does not oppose this motion.

WHEREFORE, Defendant requests a brief continuance, until the afternoon of December 17, 2019, to conduct the Detention and Removal Hearing.

Dated: December 16, 2019

*/s/ Simon A. Gaugush*
Simon A. Gaugush
Florida Bar Number 440050
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor
Tampa, Florida 33601
Telephone: (813) 223-7000
Email: sgaugush@carltonfields.com

*Counsel for Defendant Jobadiah Sinclair Weeks*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
_____________________________________/

**AFFIDAVIT IN SUPPORT OF DEFENDANT'S UNOPPOSED MOTION TO CONTINUE DETENTION AND REMOVAL HEARING**

On Friday, December 13, 2019, undersigned counsel met with Defendant Jobadiah Sinclair Weeks about the above-referenced matter. On Sunday, December 15, 2019, the defendant executed an engagement letter to retain the undersigned counsel in this case. Undersigned counsel requires additional time to fully prepare for the detention and removal hearing scheduled in this case.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Simon A. Gaugush*
Simon A. Gaugush
Florida Bar Number 440050
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor
Tampa, Florida 33601
Telephone: (813) 223-7000
Email: sgaugush@carltonfields.com

*Counsel for Defendant Jobadiah Sinclair Weeks*

MIME−Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
−−Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls−brdkt@usdoj.gov, usafls−hqdkt@usdoj.gov), Simon A. Gaugush (amaranto@carltonfields.com, sgaugush@carltonfields.com), Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
−−Non Case Participants:
−−No Notice Sent:

Message−Id:19530461@flsd.uscourts.gov
Subject:Activity in Case 9:19−mj−08526−WM USA v. Weeks Status Conference
Content−Type: text/html

**U.S. District Court**

**Southern District of Florida**

**Notice of Electronic Filing**

The following transaction was entered on 12/16/2019 at 11:51 AM EST and filed on 12/16/2019

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19−mj−08526−WM |
| **Filer:** | |
| **Document Number:** | 5(No document attached) |

**Docket Text:**
**PAPERLESS Minute Entry for proceedings held before Magistrate Judge William Matthewman: Status Conference re: report re: counsel/detention/removal as to Jobadiah Sinclair Weeks held on 12/16/2019. (Detention Hearing reset for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate. Removal Hearing reset for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate. Report Re: Counsel Hearing set for 12/17/2019 at 2:15 PM in West Palm Beach Division before WPB Duty Magistrate.). Defendant present and sworn. Court confirmed with Defendant his desire to proceed with Mr. Gaugush as his attorney of choice; Court granted defense's request for additional time to determine permanent representation and prepare for detention and removal hearings. No opposition to continuance from government. Total time in court: 6 minutes. Attorney Appearance(s): Aurora Fagan (AUSA); Simon A. Gaugush (Temporary/Limited). (Digital 10:17:21) (spe)**

**9:19−mj−08526−WM−1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov

Simon A. Gaugush     sgaugush@carltonfields.com, amaranto@carltonfields.com

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

Case 9:19-mj-08526-WM Document 6 Filed 12/16/19 Page 1 of 1

MIME−Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
−−Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls−brdkt@usdoj.gov, usafls−hqdkt@usdoj.gov), Simon A. Gaugush (amaranto@carltonfields.com, sgaugush@carltonfields.com), Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
−−Non Case Participants:
−−No Notice Sent:

Message−Id:19530515@flsd.uscourts.gov
Subject:Activity in Case 9:19−mj−08526−WM USA v. Weeks Order on Motion to Continue
Content−Type: text/html

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 12/16/2019 at 11:55 AM EST and filed on 12/16/2019

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19−mj−08526−WM |
| **Filer:** | |
| **Document Number:** | 6(No document attached) |

**Docket Text:**
**PAPERLESS ORDER denying as moot [4] Motion to Continue as to Jobadiah Sinclair Weeks (1). Per DE[5], the matters were reset during Duty Court. Signed by Magistrate Judge William Matthewman on 12/16/2019. (spe)**

**9:19−mj−08526−WM−1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov

Simon A. Gaugush     sgaugush@carltonfields.com, amaranto@carltonfields.com

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
_______________________________________/

**NOTICE OF PERMANENT APPEARANCE**

Simon A. Gaugush of Carlton Fields, P.A. files this appearance as counsel for Defendant Jobadiah Sinclair Weeks. Counsel agrees to represent the defendant for trial and all proceedings in the U.S. District Court.

Counsel acknowledges responsibility to advise the defendant of the right to appeal, and to file a timely notice of appeal if requested to do so by the defendant. Counsel hereby states that this appearance is in conformity with the requirements of Local General Rule 11.1 and the Special Rules Governing the Admission and Practice of Attorneys.

*/s/ Simon A. Gaugush*
Simon A. Gaugush
Florida Bar Number 440050
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor
Tampa, Florida 33601
Telephone: (813) 223-7000
Email: sgaugush@carltonfields.com

*Counsel for Defendant Jobadiah Sinclair Weeks*

I hereby acknowledge that I have read this form and consent to the representation of the above counsel.

__________________________________
Defendant

Case 9:19-mj-08526-WM Document 13 Filed 12/26/19 Page 42 of 54

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No: 19-mj-8526-WM

United States of America
Plaintiff,
v.

Charging District's Case No. 19-877 (ccc)

Jobadiah Sinclair Weeks,
Defendant.
_______________________________________/

**WAIVER OF RULE 5 & 5.1 REMOVAL/IDENTITY HEARINGS**

I understand that I have been charged in another district, the **District of New Jersey.**

I have been informed of the charges and of my rights to:

(1) retain counsel or request the assignment of counsel if I am unable to retain counsel;
(2) an identity hearing to determine whether I am the person named in the charges;
(3) production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;
(4) a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.;
(5) a hearing on any motion by the government for detention;
(6) request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my rights to: **(check those that apply)**

- [x] An identity hearing and production of the warrant.
- [ ] A preliminary hearing.
- [ ] A detention hearing in the Southern District of Florida.
- [ ] An identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled to in this district. I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date: 12/17/2019

[signature]
Defendant's Signature

[signature]
William Matthewman
UNITED STATES MAGISTRATE JUDGE


42

MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls-brdkt@usdoj.gov, usafls-hqdkt@usdoj.gov), Simon A. Gaugush (amaranto@carltonfields.com, sgaugush@carltonfields.com), Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:19538345@flsd.uscourts.gov
Subject:Activity in Case 9:19-mj-08526-WM USA v. Weeks Attorney Appointment/Report Re: Counsel Hearing
Content-Type: text/html

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 12/17/2019 at 4:57 PM EST and filed on 12/17/2019

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19−mj−08526−WM |
| **Filer:** | |
| **Document Number:** | 9(No document attached) |

**Docket Text:**
**PAPERLESS Minute Entry for proceedings held before Magistrate Judge William Matthewman: Report Re Counsel Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Identity/Removal Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Detention Hearing as to Jobadiah Sinclair Weeks held on 12/17/2019. Defendant present, sworn and advised of rights. Attorney Gaugush confirmed his retention as permanent counsel for matters in this district. The defendant waived identity/removal, form executed and the Court finds the waiver knowing and voluntary. Government requested pre−trial detention. Court took judicial notice of Indictment and PTS report. Government proceeded by proffer. Government Exhibits 1−3 admitted without objection (Exhibit 3 shall be sealed). Defense proffered and argued for release on bond. Defense exhibits 1−10 admitted without objection; defense exhibits 11−13 admitted over objection. Nathaniel Sinclair Weeks sworn and provided a statement. The Court ordered defendant detained. Written order to be issued; Warrant of Removal signed. Total time in court: 2 hour(s) : 18 minutes. Attorney Appearance(s): Aurora Fagan (AUSA); Simon A. Gaugush (Retained). Also present: Andrew Hinkes (Counsel for Defendant), Nathaniel Sinclair Weeks, Stephanie Weeks. (Digital 14:19:01) (spe)**

**9:19−mj−08526−WM−1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov

Case 9:19-mj-08526-WM Document 19 Filed 12/20/19 Page 4 of 4 / Page 2 of 2

Simon A. Gaugush     sgaugush@carltonfields.com, amaranto@carltonfields.com

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

Case 9:19-mj-08526-WM Document 130 Filed 12/17/19 Page 1 of 1

AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

Southern DISTRICT OF Florida

United States of America

V.

Jobadiah Sinclair Weeks

## EXHIBIT AND WITNESS LIST

Case Number: 19-mj-8526-WM

| PRESIDING JUDGE | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|
| William Matthewman | Aurora Fagan | Simon Gaugush & Andrew Hinkes |
| TRIAL DATE (S) | COURT REPORTER | COURTROOM DEPUTY |
| 12/17/2019 | DAR: 14:19:01 | Stephanie Payne |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| 1 | | 12/17/2019 | Y | Y | Map of defendant's travel |
| 2 | | 12/17/2019 | Y | Y | List of defendant's travel |
| 3 | | 12/17/2019 | Y | Y | Copy of passport - EXHIBIT TO BE SEALED |
| | | | | | |
| | 1 | 12/17/2019 | Y | Y | Photographs of house - 11627 W. 7th Way, Arvada, CO 80005 |
| | 2 | 12/17/2019 | Y | Y | Estimate of worth of house - 11627 W. 7th Way, Arvada, CO 80005 |
| | 3 | 12/17/2019 | Y | Y | Photographs of cabin - 15200 County Road 353C, Buena Vista, CO 81211 |
| | 4 | 12/17/2019 | Y | Y | Estimate of worth of cabin - 15200 County Road 353C, Buena Vista, CO 81211 |
| | 5 | 12/17/2019 | Y | Y | Weeks Abroad travel blog |
| | 6 | 12/17/2019 | Y | Y | Photographs of Haiti |
| | 7 | 12/17/2019 | Y | Y | Photograph of Cambodia |
| | 8 | 12/17/2019 | Y | Y | Photograph of Moldova |
| | 9 | 12/17/2019 | Y | Y | Photograph of Mexico |
| | 10 | 12/17/2019 | Y | Y | Photograph of Bahamas |
| | 11 | 12/17/2019 | Y | Y | Letter of Reference (Jeff Sparrow) |
| | 12 | 12/17/2019 | Y | Y | Letter of Reference (McKinley Hlady) |
| | 13 | 12/17/2019 | Y | Y | Letter of Reference (Samuel Barlow) |
| | | | | | |
| | | | | | Nathaniel Sinclair Weeks sworn and provided testimony/statement |
| | | | | | |
| | | | | | |
| | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Page 1 of 1 Pages

Case 9:19-mj-08526-WM Document 21 Filed 12/20/19 Page 1 of 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-mj-08526-WM

United States of America,

v.

Jobadiah Sinclair Weeks,

Defendant.
______________________________/

FILED BY ___ D.C.
DEC 20 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**PRETRIAL DETENTION ORDER**

Pursuant to 18 U.S.C. §§ 3142(b), (e), and (f), the Court hereby ORDERS Defendant Jobadiah Sinclair Weeks detained.

The Government urges the Court to order Defendant's pretrial detention because he is a substantial or serious risk of flight or nonappearance. After conducting a detention hearing in this case on December 17, 2019, the Court finds that no condition or combination of conditions will reasonably assure Defendant's appearance if he is released. Defendant must be detained as a serious risk of flight or nonappearance. The Court makes the following findings of fact with respect to this Order.

Factors:

**a) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.**

Defendant is charged by indictment with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and one count of conspiracy to offer and sell unregistered securities in violation of 18 U.S.C. § 371. If convicted of count one, he faces up to 20 years imprisonment.

If convicted of count two, he faces up to 5 years imprisonment.

Although the offenses Defendant is charged with are not crimes of violence and do not involve narcotics, the charges are very serious and involve an alleged large-scale $722 million-dollar lengthy fraud involving cryptocurrency.

**b) The weight of the evidence against Defendant.**

The grand jury has issued an indictment, thereby finding that probable cause supports both counts. The weight of the evidence against Defendant is substantial. The Court takes judicial notice of the information in the Indictment [DE 1] and the Pretrial Services Report. The following evidence was established by the Indictment, exhibits introduced at the detention hearing, the Pretrial Services Report, and the Government's proffer.

Defendant is alleged to have promoted BitClub Network ("BCN"), which the Government alleges "was a worldwide fraudulent scheme that solicited money from investors in exchange for shares of pooled investment in cryptocurrency mining and that rewarded existing investors for recruiting new investors." [DE 1, ¶ 1(a)]. Specifically, per the Indictment, Defendant promoted BCN to potential investors and advised BCN's owners and operators on how to solicit investments from "sophisticated investors." Defendants also allegedly conspired to sell unregistered securities. In or around December 2015, the Government alleges that Defendant messaged one of BCN's owners and advised that:

> We really should have [September] stats and [October] stats and [November] stats. The sophisticated investors with a lot of cash are hesitant with putting in big cash because they want to see the mining contract, the receipt or title to the mining equipments [sic], proof that they own something in return, how much the mine made and what the mine paid out to each share holder so they can calculate what a share is worth etc. Bitclub pool doesn't tell us how many share holders have etc. Its not transparent enough for the big big money guys.

Case 9:19-mj-08526-WM Document 21 Filed 12/20/19 Page 48 of 84

*Id.* at ¶ 4(g)(xi). In or around June 2017, the Government alleges Defendant emailed one of his co-defendants, Matthew Brent Goettsche, observing that BCN "can't just 'sell' people mining hardware (shares) in Bitclub and then not use the money to buy equipment. Its not right. Bitclub makes 20% regardless of the price." *Id.* at ¶ 4(g)(xii). Further, the Government alleges that Defendant and his co-conspirators "encouraged U.S. investors to utilize a [Virtual Private Network] to obscure their true, U.S.-based [Internet Provider] addresses so that BCN and the Defendants could avoid detection and regulation by U.S. law enforcement." *Id.* at ¶ 5(g). The Government also alleges Defendant promoted BCN on the Internet, created promotional videos, and gave speeches and presentations to potential investors across the world.

**c) Defendant's history and characteristics.**

The Court takes judicial notice of the Indictment and the Pretrial Services Report. Defendant is a 38-year-old male who lives a largely nomadic international lifestyle. He is married with one 13-month-old child. He, his wife, and his child travel extensively throughout the world approximately ten months each year. For at least the past 20 years, Defendant has used his parents' address in Colorado, where he stays only sporadically, as his home address and does not have a permanent address of his own. Defendant travels frequently across the world to give speeches and lectures on cryptocurrency investing.

As part of his extensive travel, Defendant associates with numerous self-proclaimed "anarchists." He and other "anarchists" have discussed forming their own sovereign nation-state called "Libra Land." Investors in BCN were to receive automatic citizenship in Libra Land and the nation would trade primarily in Bitcoin. Further, Defendant has sought foreign citizenship in both St. Kitts, which has an extradition treaty with the United States, and Vanuatu, a small South

Pacific island nation that has no extradition treaty with the United States. When attempting to obtain a foreign passport, Defendant wrote that he did not want his U.S. passport anymore. He also tried to obtain foreign citizenship for his wife and child. He was unsuccessful in obtaining citizenship from either country. However, Defendant endeavored on more than one occasion to obtain foreign citizenship and relinquish his U.S. citizenship. He has expressed strong dissatisfaction with the United States and has not filed any U.S. tax returns for 2014 through 2017.

Defendant also has a "diplomatic passport" from an alleged charitable organization he is a part of called "Worldwide Sports Network" and, when arrested, had a Mexican voter identification card.

Defendant's ties to both the District of New Jersey, where the Indictment was filed, and the Southern District of Florida, where he was arrested, are nil. He appears to have some ties to Colorado, since his mother and father live there, however, as noted above, he does not maintain a permanent residence anywhere in the United States.

Finally, Defendant's assets are not fully known and are somewhat surreptitious. Defendant has significant monetary holdings in cryptocurrency. He advised Pretrial Services that he owns a ranch with a fair market value of $2 million dollars, and approximately $250,000 in bitcoin. He did not advise Pretrial Services of his Mexican estate or the timeshare he allegedly owns. And, according to the Government, he has extensive assets in cryptocurrency totaling millions of dollars which are unaccounted for and which could support him if he chose to flee with his wife and child to a foreign jurisdiction. Records indicate he has a pending federal tax liability and failed to file federal tax returns for at least four years from 2014 through 2017.

**d) Defendant's criminal history.**

Defendant's criminal history is limited but does show some history of substance abuse. In August 1999, Defendant was charged with resisting arrest, obstructing police, and assault battery. He was found guilty of the latter two offenses and sentenced to six months' probation. In May 2004, Defendant was charged with two counts of driving under the influence. However, the disposition of those charges is unknown. And finally, in March 2014 Defendant was again charged with driving under the influence. However, the charge was reduced to reckless driving and Defendant pleaded guilty.

**e) The likelihood of Defendant's appearance in court if released.**

The policy underlying the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant." *United States v. Price*, 773 F.2d 1526, 1527 (11th Cir. 1985) (per curiam). When the United States seeks to detain a criminal defendant pending trial based on his or her status as a flight risk, it must prove by a preponderance of the evidence that no condition or set of conditions will reasonably assure his or her presence at trial. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985); *see also United States v. Turner*, No. 19-8173-DLB, 2019 WL 1893109, at *2 (S.D. Fla. Apr. 29, 2019); *United States v. Zhang*, No. 19-cr-80056-Altman/Brannon, 2019 WL 1747197, at *3 (S.D. Fla. Apr. 15, 2019); *United States v. Chatman*, No, 16-8462-WM, 2016 WL 8258897, at *3 (S.D. Fla. Dec. 27, 2016); *United States v. Capolongo*, No. 16-8284-CR-Hurley/Hopkins, 2016 WL 4272371, at *4 (S.D. Fla. Aug. 10, 2016); *United States v. Ceballo*, No. 12-80211-CR-Hurley/Hopkins, 2012 WL 7050591, at *5 (S.D. Fla. Dec. 14, 2012).

The Court has carefully considered whether there is any condition or combination of

conditions that would reasonably assure Defendant's appearance if he is released, including electronic and GPS monitoring. However, "[t]he GPS system, while technologically sophisticated, is ultimately just another form of electronic surveillance, and 'monitoring equipment is easily rendered inoperative or become so by mechanical failure.'" *United States v. Benatar*, No. 02-CR-99, 2002 WL 31410262, at *3 (E.D.N.Y. Oct. 10, 2002) (quoting *United States v. Gotti*, 776 F.Supp. 666, 673 (E.D.N.Y. 1991)). "The GPS system of surveillance is imperfect, and even attentive monitoring leaves the possibility of several hours' delay between a defendant's departure and the beginning of an effective search." *United States v. Khanu*, 675 F.Supp.2d 69, 75 (D.D.C. 2009). "Neither electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant releasee." *United States v. Megahed*, 519 F.Supp.2d 1236, 1244 (M.D. Fla. 2007).

Defendant appears to be an individual with no allegiance to the United States and who has endeavored to obtain citizenship in a foreign country where he can avoid taxes and other societal restrictions. He has travelled throughout the world, visiting more than 100 countries, and is alleged to have perpetrated the alleged fraud while travelling. According to the Government, Defendant has access to private jets and, when he attempted to purchase a property in St. Kitts, he stated that $560 million dollars had travelled through his account. He associates with "anarchists" who could assist him if he decided to flee the United States. He also owns an estate in Mexico where he could flee to if so inclined.

In sum, Mr. Weeks is a defendant with insufficient ties to the United States who has expressed his desire to relinquish his U.S. passport and move overseas and who, according to the Government, has access to extensive assets which would allow him to flee and hide. Although

Defendant's father stated he and his wife (Defendant's mother) would co-sign Defendant's bond and post their Colorado property as collateral, this gives the Court little comfort. If, as the Government alleges, Defendant has access to millions of dollars in cryptocurrency and other extensive assets, he could easily reimburse his parents for any financial loss they would suffer if he fled the United States.

Thus, the Court finds that there is a serious risk that Defendant will flee or fail to appear in court, if released. In light of the nature of the charged offenses; the substantial weight of the evidence against Defendant; the substantial prison term Defendant faces if convicted; Defendant's substance abuse history; his extensive foreign travel; his considerable financial resources; his association with self-proclaimed "anarchists;" his numerous attempts to gain foreign citizenship; his transient and nomadic lifestyle; his lack of any community ties to either the District of New Jersey or the Southern District of Florida; and the inadequacies of electronic monitoring, the Court finds that the Government has shown by a preponderance of the evidence that Defendant is a serious risk of flight or nonappearance and that there exist no conditions or combination of conditions which would reasonably assure Defendant's appearance in Court. Simply stated, the Court does not believe that Defendant would comply with any conditions of release set by the Court.

Accordingly, it is hereby **ORDERED** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Court directs that Defendant be afforded reasonable opportunity for private consultation with counsel; and the Court directs that, on order of a court of the United States or on request of an attorney for the

Government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE and ORDERED** in chambers at West Palm Beach, Palm, Beach County, in the Southern District of Florida, this 20th day of December, 2019.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

Case 9:19-mj-08526-WM Document 12 Filed 12/20/19 Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No: 19-mj-8526-WM

FILED BY [signature] D.C.
DEC 20 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

United States of America
Plaintiff,

Charging District's Case No. 19-877 (cce)

v.

Jobadiah Sinclair Weeks,
Defendant.

**WARRANT OF REMOVAL**

REG#: 25950-104

A(n)
- ☐ Complaint
- ☑ Indictment
- ☐ Information
- ☐ Probation Violation Warrant
- ☐ Bench Warrant

having been filed in the District of New Jersey, charging the above-named defendant with 18:371; 18:1349, and the defendant having

☐ surrendered ☑ been arrested

in the Southern District of Florida, having had an initial appearance before the Court and having:

☑ waived further hearing ☐ been given a hearing in accordance with **Fed.R.Crim.P.5(c).**

having not posted the bail as set by the Court, the defendant is hereby committed to the custody of the United States Marshal for removal to the District where the charge is pending and delivery to the United States Marshal for that District or his lawfully authorized representative.

**DONE AND ORDERED** at West Palm Beach, Florida this 20th day of December, 2019.

DAR NO: 14:19:01

[signature]
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

c: AUSA
Defense
Pretrial Services
U.S. Marshal (2 certified copies)

MIME−Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
−−Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls−brdkt@usdoj.gov, usafls−hqdkt@usdoj.gov), Simon A. Gaugush (amaranto@carltonfields.com, sgaugush@carltonfields.com), Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
−−Non Case Participants:
−−No Notice Sent:

Message−Id:19566436@flsd.uscourts.gov
Subject:Activity in Case 9:19−mj−08526−WM USA v. Weeks
Content−Type: text/html

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 12/27/2019 at 4:31 PM EST and filed on 12/27/2019

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19−mj−08526−WM |
| **Filer:** | |
| **Document Number:** | 15(No document attached) |

**Docket Text:**
**CLERK'S Notice of Receipt of Exhibit(s) received from CRD Re D.E. [10] Exhibit and Witness List. Exhibit Numbers: Government Exhibits: 1 −3 Defendant's Exhibits: 1 − 13 as to Jobadiah Sinclair Weeks. For retrieval information, please contact the Clerks Office − Records Section of the Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, Room 202, West Palm Beach, FL 33401, (561) 803−3400. (pcs)**

**9:19−mj−08526−WM−1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov

Simon A. Gaugush     sgaugush@carltonfields.com, amaranto@carltonfields.com

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

Case 9:19-mj-8526 NEF for Docket Entry 17 Filed 01/07/2020 Page 1 of 1

MIME−Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
−−Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls−brdkt@usdoj.gov, usafls−hqdkt@usdoj.gov), Simon A. Gaugush (amaranto@carltonfields.com, sgaugush@carltonfields.com), Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
−−Non Case Participants:
−−No Notice Sent:

Message−Id:19588572@flsd.uscourts.gov
Subject:Activity in Case 9:19−mj−08526−WM USA v. Weeks
Content−Type: text/html

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 1/7/2020 at 2:17 PM EST and filed on 1/7/2020

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19−mj−08526−WM |
| **Filer:** | |
| **Document Number:** | 17(No document attached) |

**Docket Text:**
**CLERK'S Notice of Noncompliance: Failure to Electronically File Exhibit(s) received from Plaintiff/Defendant Re D.E. [10] Exhibit and Witness List. Exhibit Numbers: Government Exhibits: 1 −3 Defendant Exhibits: 1 − 13 as to Jobadiah Sinclair Weeks. Unless otherwise ordered by the Court, within ten (10) days of the conclusion of a hearing or trial, a party must file in the CM/ECF system (a) an electronic version of each documentary exhibit that the party offered or introduced into evidence and (b) a digital photograph of each non−documentary physical exhibit that the party offered or introduced into evidence. See Local Rule 5.3(b)(3) for exemptions to mandatory electronic filing. Attorney(s)/Party(s) Plaintiff/Defendant shall file exhibits and a certificate of compliance within three days. For retrieval information, please contact the Clerks Office − Records Section of the Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, Room 202, West Palm Beach, FL 33401, (561) 803−3400. Clerk − check for certificate of compliance on 1/13/2020. (pcs)**

**9:19−mj−08526−WM−1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov

Simon A. Gaugush     sgaugush@carltonfields.com, amaranto@carltonfields.com

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

Case 9:19-mj-08526-WM Document 18 Filed 01/09/20 Page 1 of 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
_____________________________________/

**DEFENDANT JOBADIAH SINCLAIR WEEKS'**
**NOTICE OF FILING EXHIBITS**

Defendant Jobadiah Sinclair Weeks, through his undersigned attorney, hereby submits the following exhibits (attached hereto as Defense Exhibits 1 through 13) entered into evidence at the December 17, 2019 pretrial detention hearing held before U.S. Magistrate Judge William Matthewman.

Defense Exhibit Index

| | |
|---|---|
| Exhibit 1 | Photographs of Nat Weeks' house – 11627 W. 7th Way, Arvada, CO 80005 |
| Exhibit 2 | Estimate of worth of Nat Weeks' house – 11627 W. 7th Way, Arvada, CO 80005 |
| Exhibit 3 | Photographs of Nat Weeks' cabin – 15200 County Road 353C, Buena Vista, CO 81211 |
| Exhibit 4 | Estimate of worth of Nat Weeks' cabin - 15200 County Road 353C, Buena Vista, CO 81211 |
| Exhibit 5 | Weeks Abroad travel blog |
| Exhibit 6 | Photographs of Haiti |
| Exhibit 7 | Photograph of Cambodia |
| Exhibit 8 | Photograph of Moldova |
| Exhibit 9 | Photograph of Mexico |
| Exhibit 10 | Photograph of Bahamas |

Case 9:19-mj-08526-WM Document 18 Filed 01/09/20 Page 2 of 3

| Exhibit 11 | Letter of Reference (Jeff Sparrow) |
|---|---|
| Exhibit 12 | Letter of Reference (McKinley Hlady) |
| Exhibit 13 | Letter of Reference (Samuel Barlow) |

*/s/ Simon A. Gaugush*
Simon A. Gaugush
Fla. Bar Number 0440050
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor
Tampa, Florida 33601
Telephone: (813) 223-7000
Email: sgaugush@carltonfields.com

*Counsel for Defendant Jobadiah Sinclair Weeks*

Case 9:19-mj-08526-WM Document 18 Filed 01/09/20 Page 3 of 3

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 9, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will forward electronic notification to all counsel of record.

*/s/ Simon A. Gaugush*
Simon A. Gaugush
Fla. Bar Number 0440050

Case 9:19-mj-08526-WM Document 18-1 Filed 01/09/20 Page 1 of 3



Case 9:19-mj-08526-WM Document 18-1 Filed 01/09/20 Page 2 of 3





Case 9:19-mj-08526-WM Document 18-2 Filed 01/09/20 Page 1 of 3

Public View Owner View

Street View

# 11627 W 74th Way Arvada, CO 80005

OFF MARKET

Zestimate®:$712,231

Rent Zestimate®: $3,200 /mo

**4 beds 4 baths 3,740 sqft**

## Get a Zillow Offer

No staging, no showings, no repairs. Move when you're ready.

**CASH OFFER**

Get your Offer

**500+** homeowners near you have requested an offer.

Case 9:19-mj-08526-WM Document 18-2 Filed 01/09/20 Page 2 of 3

11627 W 74th Way, Arvada, CO is a single family home that contains 3,740 sq ft and was built in 1989. It contains 4 bedrooms and 4 bathrooms. This home last sold for $433,000 in July 2001. The Zestimate for this house is $712,231, which has increased by $12,144 in the last 30 days. The Rent Zestimate for this home is $3,200/mo, which has increased by $165/mo in the last 30 days.

## Facts and Features

**Type**
Single Family

**Year Built**
1989

**Heating**
Forced air

**Cooling**
No Data

**Parking**
3 spaces

**Lot**
9,278 sqft

### INTERIOR FEATURES

**Bedrooms**
Beds: 4

**Flooring**
Floor size: 3,740 sqft

**Heating and Cooling**
Heating: Forced air

**Other Interior Features**
Fireplace

**Basement**
Partially finished

See More Facts and Features

# Home Value

**Zestimate**
**$712,231**

**Zillow Offer**
**Get your Zillow Offer**

Case 9:19-mj-08526-WM Document 18-2 Filed 01/09/20 Page 3 of 3

**ZESTIMATE RANGE**
$648,000 - $769,000

**LAST 30 DAY CHANGE**
+$12,144 (+1.7%)

**ONE YEAR FORECAST**
$724,125 (+1.7%)

Zestimate history & details

# Price / Tax History

Price History Tax History

| DATE | EVENT | PRICE | | $/SQFT | SOURCE |
|---|---|---|---|---|---|
| 7/16/2001 | Sold | $433,000 | +441.2% | $116 | Public Record |
| 7/25/2000 | Sold | $80,000 | -75.8% | $21 | Public Record |
| 11/30/1995 | Sold | $330,000 | | $88 | Public Record |

Report issue with price history

Case 9:19-mj-08526-WM Document 18-5 Filed 01/09/20 Page 1 of 2

Case 9:19-mj-08526-WM Document 18-5 Filed 01/09/20 Page 2 of 2





# What's My Home *Really* Worth?

**Values on this page are modeled, please work with your agent for a precise value assessment.**

**Enter Address and Street Name** 15200 County Road 353C ( 123 Main Street )

**City, State OR Zip** 81211 ( Anaheim, CA OR 92768 )

SEARCH

Help...

353C
Alpine Ln
637K
473K
Google
Value
hanges to your home value by
values for the attributes of your
alues" to see the effect of your
map, or "Reset" to restore the
n your home.
$325,000
Values
Reset
Home

**Showing :** My Home | Homes For Sale | Homes Recently Sold | Property Values | Parcels

Please wait while your map

**DISCLAIMER: THE DATA AND VALUATIONS ARE PROVIDED AS IS WITHOUT WARRANTY OR GUARANTEE OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE EXISTENCE OF THE SUBJECT PROPERTY AND THE ACCURACY OF THE VALUATIONS ARE ESTIMATED BASED ON AVAILABLE DATA AND DO NOT CONSTITUTE AN APPRAISAL OF THE SUBJECT PROPERTY AND SHOULD NOT BE RELIED UPON IN LIEU OF UNDERWRITING OR AN APPRAISAL.**

2019 © CoreLogic. All Rights Reserved.

Additional Disclaimer | Google Maps Terms of Use | MLS Terms & Conditions | CoreLogic Terms & Conditions | Microsoft Privacy | CoreLogic Privacy

TRENDING: Sicily

Shop

# ABOUT US

Welcome, friends!

Joby and Stephanie Weeks, here—or, as you'll come to know us, Weeks Abroad. We've been traveling the world together for over a decade, now. Together, we've explored 141 countries and counting. Our goal has been to pack seven lifetimes into one and have a whole lot of fun doing it, going everywhere and doing everything.

**JUST RELEASED!**

**DOWNLOAD** A SAMPLE CHAPTER OF STEPH'S NEW BOOK, **FOOD OF THE SPIRIT!**

BUY NOW

# JOURNEY WITH US

At the beginning of each new year, we make a bucket list. We write down all of places we want to see or things we want to do...and then we go do them. We've been blessed to learn a lot and meet tons of interesting people along the way. We love sharing our adventures and travel hacks. Traveling for more than a couple of weeks a year was once just a dream. Like many of you, we didn't want to be confined to a time table that dictated when we could travel and what we'd be able to see and do each year. So we broke out on a mission to see the world in our own way and time. Journey with us, here, on the adventure of a life time. Learn how you, too, can become a travel junkie. Discover the best places to see and grab inspiration from our insider guides regarding amazingly cool things to do.

Start making your own bucket list. Here we go...

**JUST RELEASED!**

**DOWNLOAD** A SAMPLE CHAPTER OF STEPH'S NEW BOOK, **FOOD OF THE SPIRIT!**

BUY NOW

Welcome to Weeks Abroad | What's On Your Bucket List? Page 3 of 7

# WHAT'S ON YOUR BUCKET LIST?

**JUST RELEASED!**

**DOWNLOAD** A SAMPLE CHAPTER OF STEPH'S NEW BOOK, **FOOD OF THE SPIRIT!**

BUY NOW

127
https://weeksabroad.com/ 12/16/2019

Welcome to Weeks Abroad | What's On Your Bucket List? Page 4 of 7

The Cook Islands: A Remote Paradise
November 5, 2019
Kia Orana! This is the greeting used to welcome visitors to the Cook Islands, fifteen of the most remote islands in the world. Spanning two million ... Read more
NORTH AMERICA
EUROPE
ASIA
AFRICA
Atlantic Ocean
ANTARCTICA
Google
Map data ©2019

# HERE WE GO!

**7**
**Continents**

**141**
**Countries**

**5**
**Oceans**

**1237**
**Cities**

**JUST RELEASED!**

**DOWNLOAD** A SAMPLE CHAPTER OF STEPH'S NEW BOOK, **FOOD OF THE SPIRIT!**

BUY NOW

128
https://weeksabroad.com/ 12/16/2019

Case 9:19-mj-08526-WM Document 18-5 Filed 01/09/20 Page 5 of 7
Welcome to Weeks Abroad | What's On Your Bucket List? Page 5 of 7

# INSIDER GUIDES

JUST RELEASED!
DOWNLOAD A SAMPLE CHAPTER OF ST
BUY

129

https://weeksabroad.com/ 12/16/2019

Welcome to Weeks Abroad | What's On Your Bucket List? Page 6 of 7

NORTH
JUST RELEASED!
DOWNLOAD A SAM

130
https://weeksabroad.com/ 12/16/2019



© 2019 **RIVER NET CREATIVE INDUSTRIES** | A DIVISION OF **RIVER NET COMPUTERS**

**JUST RELEASED!**

**DOWNLOAD** A SAMPLE CHAPTER OF STEPH'S NEW BOOK, **FOOD OF THE SPIRIT!**

BUY NOW

DR. LOUIS G.
LAMOTHE

Case 9:19-mj-08526-WM   Document 18-6   Filed 01/10/20   Page 3 of 3

Case 9:19-mj-08526-WM Document 20-5 Filed 01/09/20 Page 1 of 1

BAHAMAS

Case 9:19-mj-08526-WM Document 18-11 Filed 01/09/20 Page 1 of 1

U.S. Magistrate Judge William Matthewman
U.S. District Court, Southern District of Florida
701 Clematis Street #453
West Palm Beach, Florida 33401,

My name is Jeff Sparrow and I'm proud to offer additional character support for Jobadiah Weeks, whom I have personally known for more than 12 years as a friend and fellow entrepreneur. I first met Joby through mutual friends of ours at a tech conference.

During my relationship with Joby I have experienced an individual who shows up when asked, works hard, and carries himself in a polite, respectable, and compassionate manner. Joby and I have had numerous business meetings together as well outside of family or social gatherings, and in every occasion, Joby is a family-person who has always presented himself with honesty and grace.

I'm not aware of the situation or circumstances to why Joby is having to appear in court, but I didn't hesitate at the opportunity to help him or his amazing family when asked for support. I would absolutely believe and attest that Joby's character is and should be a strong position to his defense no matter what the case entails.

Please do not hesitate to contact me if you should require any further information.

Sincerely,

Jeff Sparrow
CEO
C: (805) 748-0056
E: Jeff@geocommerce.com

Case 9:19-mj-08526-WM Document 18-12 Filed 01/09/20 Page 1 of 1

**Gaugush, Simon A.**

| | |
|---|---|
| **m:** | McKinley Hlady <mckinley@lifetecgroup.ca> |
| **Sent:** | Sunday, December 15, 2019 6:50 PM |
| **To:** | Gaugush, Simon A. |
| **Subject:** | Friend of Jobadiah Sinclair Weeks |

U.S. Magistrate Judge William Matthewman
U.S. District Court, Southern District of Florida 701 Clematis Street #453 West Palm Beach, Florida 33401

I have known Joby Weeks since December 16th 2017. I met Joby at a private entrepreneurial conference with a group of heartfelt positive people, all talking about ways to help the earth and do good things in business to be able to benefit people.

I know Joby to be a very true spirited entrepreneur, that takes risks and trusts people with an intention to always give back, and further humanity in a positive way. I know he has both lost a lot of capital trusting the wrong people, but also done well in some cases financially. In the wins he's had he is always looking to pay it forward. We connected on projects that would benefit the earth mainly.

I know he was heavily involved in bitcoin and it does not surprise me that he got involved in an MLM in that space being BitClub. In reading the news articles, one part did strike me true to his character, that he said some things were "not right". I know Joby has been involved in many investments at arms length, and especially has been focused on family lately. I don't know the details on how Bitclub or MLMs in general fully work, but my ımption would be that he may have been locked in at some point, without ability to influence. What he could nave done from there I'm not sure, but I know Joby to have a great heart and care about people, so I believe he will be inclined and motivated to make things right, at least financially, however possible at this point.

I hope Joby's good character can be separated from what looks like a reckless head of an organization that was most definitely doing things that were "not right".

Please feel free to call me anytime at 1.236.882.4625 or reach back here, or my personal email mckinley101@gmail.com

Thank you and Godbless.

--
McKinley Hlady | Co-Founder / VP Manufacturing

LifeTec Construction Group | www.lifetecgroup.ca
Mobile Canada : 236.882.4625
Mobile U.S.A. : 310.494.1318
Office: 604.260.6303 ext 1002
3750 North Fraser Way | Burnaby | BC | Canada | V5J 5G1



U.S. Magistrate Judge William Matthewman
U.S. District Court, Southern District of Florida
701 Clematis Street #453
West Palm Beach, Florida 33401,


My name is Samuel Barlow and I'm proud to offer additional character support for Jobadiah Weeks, whom I have known for some time now as a friend and fellow entrepreneur. I first met Joby through mutual friends of ours at a tech conference in Boston.

During my relationship with Joby I have experienced an individual who is friendly, kind and clear and concise in his professional dealings. Joby and I have had a few business meetings together as well social engagements, and in every occasion, Joby has always presented himself with honest and intelligent conduct.

I'm not aware of the situation or circumstances to why Joby is having to appear in court, but I didn't hesitate at the opportunity to help him when asked for support. I absolutely believe that Joby's good character, if relevant to the case, should not be in doubt.

Please do not hesitate to contact me if you should require any further information.



Sincerely,

Samuel Barlow
CEO
C: +44 (0) 7775 683416
E: samuel@openstage.live

Case 9:19-mj-08526-WM Document 19 Filed 01/09/20 Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
_______________________________________/

**CERTIFICATE OF COMPLIANCE REGARDING ADMITTED EVIDENCE**

I, Simon A. Gaugush, as counsel for Defendant Jobadiah Sinclair Weeks hereby certify the following:

Check the applicable sections:

[X] ALL EXHIBITS E-FILED: All documentary exhibits and photographs of non-documentary physical exhibits offered or introduced into evidence have been electronically filed in CM/ECF.

[ ] EXHIBITS NOT E-FILED: The following is an itemized list of exhibits that are exempt from mandatory electronic filing pursuant to Local Rule 5.3(b)(3):

______________________________________________________________________________

______________________________________________________________________________

Any original exhibits that have been returned to or retained by the filing party after electronic filing shall be kept for safe keeping until the conclusion of any appeals. Upon order of court, the filing party agrees to return the original exhibits to the Clerk of Court.

This Certificate shall be filed within ten days of the conclusion of a hearing or trial. Failure to timely comply with the requirements of Local Rule 5.3(b) may result in the imposition of sanctions.

Signature: *<u>/s/ Simon A. Gaugush</u>* Date: January 9, 2020

120783467.1

Case 9:19-mj-8526 NEF for Docket Entry 20 Filed 01/14/2020 Page 1 of 1

MIME−Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
−−Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls−brdkt@usdoj.gov, usafls−hqdkt@usdoj.gov), Simon A. Gaugush (amaranto@carltonfields.com, sgaugush@carltonfields.com), Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
−−Non Case Participants:
−−No Notice Sent:

Message−Id:19610878@flsd.uscourts.gov
Subject:Activity in Case 9:19−mj−08526−WM USA v. Weeks
Content−Type: text/html

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 1/14/2020 at 9:13 AM EST and filed on 1/14/2020

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19−mj−08526−WM |
| **Filer:** | |
| **Document Number:** | 20(No document attached) |

**Docket Text:**
**CLERK'S Notice Directing Counsel to Retrieve Exhibit(s) received from Defendant Re D.E. [18] Exhibits,. Exhibit Numbers: Defendant's Exhibits: 1 −13 as to Jobadiah Sinclair Weeks. Attorney(s)/Party(s) Defendant shall retrieve original exhibits within five days. For retrieval information, please contact the Clerks Office − Records Section of the Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, Room 202, West Palm Beach, FL 33401, (561) 803−3400. (pcs)**

**9:19−mj−08526−WM−1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov

Simon A. Gaugush     sgaugush@carltonfields.com, amaranto@carltonfields.com

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

Case 9:19-mj-8526 NEF for Docket Entry 21 Filed 01/14/2020 Page 1 of 1

MIME−Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
−−Case Participants: Aurora Fagan (aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, sgeer@usa.doj.gov, shawn.ball@usdoj.gov, usafls−brdkt@usdoj.gov, usafls−hqdkt@usdoj.gov), Simon A. Gaugush (amaranto@carltonfields.com, sgaugush@carltonfields.com), Magistrate Judge William Matthewman (matthewman@flsd.uscourts.gov)
−−Non Case Participants:
−−No Notice Sent:

Message−Id:19610893@flsd.uscourts.gov
Subject:Activity in Case 9:19−mj−08526−WM USA v. Weeks
Content−Type: text/html

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 1/14/2020 at 9:15 AM EST and filed on 1/14/2020

| | |
|---|---|
| **Case Name:** | USA v. Weeks |
| **Case Number:** | 9:19−mj−08526−WM |
| **Filer:** | |
| **Document Number:** | 21(No document attached) |

**Docket Text:**
**CLERK'S Second Notice of Noncompliance: Failure to Electronically File Exhibit(s) received from Plaintiff Re D.E. [10] Exhibit and Witness List. Exhibit Numbers: Government Exhibits: 1 − 3 as to Jobadiah Sinclair Weeks. Unless otherwise ordered by the Court, within ten (10) days of the conclusion of a hearing or trial, a party must file in the CM/ECF system (a) an electronic version of each documentary exhibit that the party offered or introduced into evidence and (b) a digital photograph of each non−documentary physical exhibit that the party offered or introduced into evidence. See Local Rule 5.3(b)(3) for exemptions to mandatory electronic filing. Attorney(s)/Party(s) Plaintiff shall file exhibits and a certificate of compliance within three days. For retrieval information, please contact the Clerks Office − Records Section of the Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, Room 202, West Palm Beach, FL 33401, (561) 803−3400. Clerk − check for certificate of compliance on 1/21/2020. (pcs)**

**9:19−mj−08526−WM−1 Notice has been electronically mailed to:**

Aurora Fagan     aurora.fagan@usdoj.gov, maureen.booker@usdoj.gov, SGeer@usa.doj.gov, Shawn.Ball@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov

Simon A. Gaugush     sgaugush@carltonfields.com, amaranto@carltonfields.com

**9:19−mj−08526−WM−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

Case 9:19-mj-08526-WM Document 22 Filed 01/16/20 Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-mj-08526-MATTHEWMAN

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

Defendant.
_______________________________________/

**GOVERNMENT'S NOTICE OF FILING**
**OF EXHIBIT LIST AND EXHIBITS**

The United States of America, through the undersigned Assistant United States Attorney, hereby submits the following exhibit list (copies of said exhibits are attached hereto as Government's Exhibits 1 and 2) entered into evidence at the December 17, 2019 pretrial detention hearing in the above captioned matter, held before U.S. Magistrate Judge William Matthewman.

Government's Exhibit List

| | |
|---|---|
| Exhibit 1 | Map of Defendant's Travel |
| Exhibit 2 | List of Defendant's Travel |
| Exhibit 3 | Passport documents (filed under seal) |

*/s/ Aurora Fagan*
Aurora Fagan
Assistant United States Attorney
Florida Bar No. 0188591
500 S. Australian Ave, Ste. 400
West Palm Beach, Florida 33401
TEL (561) 820-8711
FAX (561) 820-8777
Aurora.Fagan@usdoj.gov

Atlantic Ocean
AFRICA
ASIA
SOUTH
Pacific Ocean
Indian Ocean
OCEANIA
AO386-C
GOVERNMENT EXHIBIT
CASE NO. Jobadiah Weeks 19-mj-08526-WM
EXHIBIT NO. 1

Case 9:19-mj-08526-WM Document 22-2 Filed 01/16/20 Page 1 of 3

**Travel Records**

According to Government travel records, Weeks has undertaken the following travel between the U.S. and international locations since on or about November 15, 2016:

| Travel Date | Departure location | Arrival location |
|---|---|---|
| 11/22/2019 | Zurich | New York |
| 10/6/2019 | Key West | Nassau |
| 10/2/2019 | Rome | Chicago |
| 9/25/2019 | Chicago | Rome |
| 9/20/2019 | Bangor | Prince Edward Island |
| 8/26/2019 | St. Kitts/Nevis | Miami |
| 8/10/2019 | Atlanta | St. Kitts/Nevis |
| 7/14/2019 | Tokyo | Honolulu |
| 4/20/2019 | Washington Dulles | Munich |
| 4/16/2019 | St. Kitts/Nevis | San Juan |
| 4/10/2019 | Dominica | Denver-Aurora |
| 4/4/2019 | Cancun | Dallas/FT Worth |
| 4/2/2019 | Houston | Cancun |
| 3/21/2019 | Cancun | Miami |
| 3/19/2019 | Houston | Cancun |
| 2/26/2019 | Mexico City | Salt Lake City |
| 2/14/2019 | Houston | Mexico City |
| 1/28/2019 | Panama | Denver |
| 12/30/2018 | Miami | Santiago |
| 12/14/2018 | Reykjavík | Denver |
| 12/8/2018 | Miami | Lisbon |
| 12/6/2018 | Belize City | Miami |
| 11/30/2018 | Dallas/FT Worth | Belize City |
| 9/10/2018 | Greenland | Chicago |
| 9/8/2018 | Canada | Fairbanks |
| 7/23/2018 | St. Kitts/Nevis | Miami |
| 7/18/2018 | Belize City | Miami |
| 7/18/2018 | Miami | St. Kitts/Nevis |
| 7/13/2018 | Houston | Belize City |
| 7/6/2018 | Amsterdam | Atlanta |
| 4/12/2018 | New York | Istanbul |
| 3/23/2018 | BC, Canada | Gypsum, Colorado |
| 3/23/2018 | BC, Canada | Denver |

AO386-C
GOVERNMENT EXHIBIT
CASE NO. Jobadiah Weeks 19-mj-08526-WM
EXHIBIT NO. 2

Case 9:19-mj-08526-WM Document 22-2 Filed 01/16/20 Page 2 of 3

| Travel Date | Departure location | Arrival location |
|---|---|---|
| 3/20/2018 | Gypsum, Colorado | BC, Canada |
| 3/2/2018 | Nassau Intl | Atlanta |
| 2/27/2018 | Mexico City | Miami |
| 2/27/2018 | Miami | Nassau Intl |
| 2/15/2018 | Los Angeles | Mexico City |
| 2/5/2018 | Tokyo | Denver |
| 1/26/2018 | Washington Dulles | Tokyo |
| 1/24/2018 | Belize City | Miami |
| 1/21/2018 | Quito, Ecuador | Houston |
| 1/21/2018 | Houston | Belize City |
| 1/12/2018 | Las Vegas | Mexico City |
| 1/5/2018 | St. Kitts/Nevis | Miami |
| 12/23/2017 | Charlotte | St. Kitts/Nevis |
| 12/10/2017 | Tokyo | Los Angeles |
| 11/6/2017 | Honolulu | Sydney |
| 10/30/2017 | Panama | Los Angeles |
| 10/8/2017 | Miami | St. Kitts/Nevis |
| 10/2/2017 | Istanbul | New York |
| 9/20/2017 | Munich | Denver |
| 9/5/2017 | San Francisco | Manila |
| 8/31/2017 | Mexico City | Los Angeles |
| 8/13/2017 | Panama | San Francisco |
| 8/9/2017 | Houston | Panama |
| 7/29/2017 | British Virgin Islands | St. Thomas |
| 7/23/2017 | Charlotte | St. Maarten |
| 6/21/2017 | Reykjavík | Boston |
| 5/19/2017 | Westchester County, NY | London |
| 5/18/2017 | St. Kitts/Nevis | San Juan |
| 5/14/2017 | Miami | St. Kitts/Nevis |
| 5/7/2017 | Seattle Lake Union | Ontario |
| 5/4/2017 | Mexico | Los Angeles |
| 4/20/2017 | Miami | Columbia |
| 4/19/2017 | Zurich | Miami |
| 3/21/2017 | Miami | Lima |
| 3/19/2017 | Seoul | Los Angeles |
| 3/13/2017 | Denver | Tokyo |
| 3/7/2017 | Punta Cana | San Juan |
| 2/24/2017 | Chicago | Mexico City |
| 2/23/2017 | Hong Kong | Chicago |
| 2/24/2016 | Hong Kong | Newark |

| Travel Date | Departure location | Arrival location |
|---|---|---|
| 12/23/2016 | Hong Kong | Newark |
| 11/15/2016 | Houston | London |

The chart does not account for travel entirely between international locations.

Case 9:19-mj-08526-WM Document 23 Filed 01/16/20 Page 1 of 1

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. ______________________________**

**_____________________,**
**Plaintiff**

**v.**

**_____________________,**
**Defendant.**

**CERTIFICATE OF COMPLIANCE RE ADMITTED EVIDENCE**

I, _______________________________________, as counsel for the plaintiff/defendant,

_______________________________________, hereby certify the following:

Check the applicable sections:

☐ ALL EXHIBITS E-FILED: All documentary exhibits and photographs of non-documentary physical exhibits admitted into evidence have been electronically filed in CM/ECF.

☐ EXHIBITS NOT E-FILED: Some documentary exhibits and/or other physical exhibits admitted into evidence cannot be electronically filed in CM/ECF. This includes sealed criminal exhibits and contraband. The following identifies those exhibit numbers that have been retained by the Clerk, and separately identifies those exhibit numbers retained by this filing party. (Itemize or attach a list).
Retained by the Clerk:_____________________________________________________
Retained by filing party:___________________________________________________

☐ AUDIO/VIDEO EXHIBITS: The following audio and/or video exhibits were entered into evidence during these proceedings. The filing party has conventionally filed with the Clerk of Court a CD or DVD containing the audio or video recording. **Counsel filing audio and/or video exhibits understands that all conventionally filed exhibits are available for public viewing unless filed under seal.**
(Itemize or attach a list.) ___________________________

Any original exhibits that have been returned to or retained by the filing party after electronic filing shall be kept for safe keeping until the conclusion of any appeals. Upon order of court, the filing party agrees to return the original exhibits to the Clerk of Court.

This Certificate shall be filed within ten (10) days of the conclusion of trial or relevant proceedings. Failure to timely comply with the requirements of Administrative Order 2016-70 governing the Electronic Filing of Exhibits may result in the imposition of sanctions.

Signature: ___________________________________ Date: __________________